WESLEY REID, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1. When one juror, on a trial of an indictment for a felony, has been sworn, and a *nolle prosequi* is then entered, and a new bill found, it is not error that the array, with the same juror upon it, is put upon the prisoner; and in such a case the right of challenge, both on the part of the State and the prisoner, is the same as if the former proceedings had not been taken.

2. On a trial for murder, the Court charged the jury, among other things, that "malice is presumed from the killing, and you should find the defendant guilty, unless he has shown by proof, such facts and circumstances as will make the killing justifiable, or reduce it to manslaughter." The defendant introduced no witnesses and relied on the evidence for the prosecution for his defense. The verdict was for manslaughter:

*Held*, That the verdict showed that the jury were not misled by the charge, as to the right of the defendant to claim an acquittal, or a verdict for a less offense than murder, if the evidence which was before the jury authorized it.

3. The fact that a husband has been told that indecent proposals have been made to his wife, is not, in law, a *justification* tor slaying the person who is charged with having made them.

4. The evidence is sufficient to authorize the verdict, and, under the rule so often announced, prevents this Court from holding that there was an abuse of discretion by the Judge who tried the case, in refusing a new trial.

Criminal law. Jury. Evidence. New trial. Before Judge HALL. Pike Superior Court. April Adjourned Term, 1873.

Wesley Reid was placed on trial for the offense of murder, alleged to have been committed upon the person of one Amos Martin, on December 25th, 1872. The defendant pleaded not guilty. After the array had been put upon the defendant and one juror selected, the Solicitor General, on account of a defect therein, entered a *nolle prosequi* on the indictment, the defendant neither consenting nor objecting. On the next day the defendant was again arraigned on a new indictment, and pleaded not guilty. When the array was put upon him, embracing the same juror who had been sworn on the previous day, he challenged the array because it was composed of the

same jurors who had been put upon him under the first indictment. The challenge was overruled, and the defendant excepted.

The evidence for the State made, in substance, the following case: The defendant, his family, George Black and his wife occupied the same house. On December 25th, 1872, the deceased came to this house and asked George Black and his wife where defendant was. They replied that he had gone across the river with his wife. When defendant returned, deceased was in the house. He pushed up against defendant, who said to him, "Let me into the fire, as I am wet and cold." Defendant stood before the fire, dried his gun, and was about to place it on the rack when deceased caught hold of it. Defendant told him to let loose. He replied that he would not.. After some scuffling, and a threat from the defendant that he would knock him down, the deceased let go. The deceased then walked out of the house, and had gone some twenty yards when defendant said to his little girl, "Lucy, here is a bird," handing to her a bird which he had killed. Deceased turned and asked defendant what he said. He replied, "Go along, Amos, I am not talking to you, but to folks." Deceased said, "I am as good a little man as walks in Pike county." Defendant said that he did not like for a man to come to his house and banter him out. Deceased replied that he would rather fight to-day than run a foot race. Defendant asked him if he meant what he said. He replied that he did. Defendant started towards him, when he retired two or three feet and picked up an axe. Defendant said "all right," returned to the house, got his gun, cocked one barrel and started towards the door, when George Black's wife closed it and shoved him back. Defendant told her to let him out. She said she would not. He then went out of the back door. Black's wife told deceased to come in, or defendant would kill him. He replied that he would not; that he would go to defendant if he was "as big a nigger as hell." Defendant went around the house, fired at deceased twice, and then knocked him down with the butt of the gun. It was about two min-

utes before deceased could speak; he then turned on his right side and said, "West, I did not go to cut you with the axe." Defendant took up the axe and again started towards deceased, when George Black caught him and said, "For God's sake stop, as you have done too much already." Most of the shot struck deceased on the right side, below the collar-bone; some · few scattered and penetrated different portions of his body. He died from the effects of his wounds. A negro was present by the name of Bob Parks at the commencement of the difficulty. The deceased proposed to Parks, in the presence of the defendant, to go across the river and frolic with the girls. Defendant's wife had told him three or four days before the homicide that deceased had offered her $5 00 to let him come to see her as a sweetheart, and for her not to notice defendant. Deceased asked defendant where his wife was, and when he replied over the river, deceased proposed to Parks to go over there and frolic with the girls.

The defendant introduced no testimony, but relied upon the evidence for the State.

The jury found the defendant guilty of voluntary manslaughter. He moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in overruling the aforesaid challenge to the array.

2d. Because the Court erred in charging the jury, among other things, that "malice is presumed from the killing, and you should find the defendant guilty, unless he has shown by proof, such facts and circumstances as will make the killing justifiable, or reduce it to manslaughter."

3d. Because the Court erred in charging the jury as follows: ·"But before the killing can be justifiable on this ground (the seduction of defendant's wife) it must appear from the evidence, that to prevent the seduction of his wife the killing was absolutely necessary, and that the killing proceeded from no other cause than a desire to save his wife from seduction. Notwithstanding the prisoner may have had knowledge of the fact that his wife had been seduced by the deceased, or

that efforts were then being made by deceased to seduce her, still, if prisoner attacked and took the life of deceased for any other cause, or they naturally fought for any other cause, and prisoner killed deceased, he is not then protected on the ground that he was protecting the virtue of his wife."

4th. Because the verdict was contrary to the law and the evidence.

The motion was overruled and defendant excepted.

BOYNTON & DISMUKE; DOYAL & NUNNALLY, for plaintiff in error.

T. B. CABANESS, Solicitor General, by PEEPLES & HOWELL, for the State.

TRIPPE, Judge.

1. The objection is not that the Court permitted a *nolle prosequi* to be entered, but that one juror having been sworn before this was done, the same panel with that juror was again put upon the defendant, after the finding of a new bill. We can see no possible hurt to the defendant in this. He had expressed himself content with this juror and had chosen him. He was only given a second opportunity to pass upon him, and of this surely he could not complain. But the juror was challenged by the State, and the objection is, that as the defendant had indicated his willingness to accept him, the State thereby had an advantage, and from that notice made the challenge. The meaning of this is, that the defendant unfairly lost a juror whom he wished to try him, and whom he had once selected. But where was there any possible remedy for this? Was the *nolle prosequi* rightly entered? That is taken as granted, for no exception is made of it. Nor is the exception that the State was permitted to challenge the juror when he was again called, on the second proceeding, to select a jury. When the bill was disposed of by the *nolle prosequi*, all that had been done, as to the jury, fell with it,

and the right of challenge, both as to the State and the defendant, was the same as if the former proceedings had not been taken. It does not appear that other jurors who had been challenged by either side were on the array, and no question of that sort arises. If the juror who had been once sworn had been left off the array, the defendant could have been in no better condition; indeed, in not as good. For if he wished to have that juror, and he was not on the panel, he could then have had no chance. As it was, he did have the chance, provided the State did not challenge, and if it did challenge, then the State was charged with it, and had one challenge less thereafter. This was no damage to the defendant, and he could not possibly have been relieved from the position, except by denying the right of the State to challenge under the circumstances. This he did not do.

2. The Court charged the jury that, "malice is presumed from the killing, and you should find the defendant guilty, unless he has shown by proof such facts and circumstances as will make the killing justifiable or reduce it to manslaughter." The objection to this charge is, that as the defendant introduced no evidence, it denied him the benefit of such facts and circumstances as were proven by the State's witnesses; that it limited him to what he must prove by witnesses introduced by himself. Had the jury found a verdict for murder, there would have been force in the objection that the jury might have been misled by the charge. But, as stated by the Judge, in passing on the motion for a new trial, "although the charge was not strictly correct, the verdict shows that the jury did not put upon it the construction claimed by prisoner's counsel. The fact that they found the defendant guilty of voluntary manslaughter is evidence that they construed the charge properly, to-wit: that when the killing is proved to have been done by the defendant, malice is presumed, and he should be found guilty of murder, unless the proof discloses such facts and circumstances as will reduce the killing from murder to manslaughter, or show it to be justifiable." We think the

Reid *vs.* The State of Georgia.

Judge is correct in this, and that the jury was not misled by the charge.

3. The exceptions made to the charge, on the ground that there was error in it as to the matter of the seduction, or attempted seduction of defendant's wife, might be disposed of by a general remark, to-wit: that the evidence did not call for any special charge on that subject, as made and complained of. Whether the Court was right or wrong, is immaterial in this case. There was no evidence whatever that the deceased had seduced defendant's wife, or that defendant killed him to prevent the seduction. Not one word passed between them about it at the time of the killing. A quarrel had arisen between them, and was being carried on furiously, when defendant shot deceased, but nothing was said by defendant, or any one else, as to an outrage or insult to his wife. One of the witnesses says, "a few days before, defendant's wife told him (defendant) that deceased had offered her $5 00 to let him come to see her as a sweetheart." But if this was so, it did not seem to produce much effect on the defendant. He came into the house where deceased was, was friendly, dried his gun and put it up, and, though deceased was acting very provokingly, did not get "mad" until after deceased had gone out of the house, and a quarrel arising, dared the defendant out. It was not until then that the defendant became enraged, and the fatal rencontre took place. The evidence does not show that the virtue of the wife, or her attempted seduction, or what she may have said to the defendant, had anything to do with the killing. It would be going very far for it to be laid down as a rule of law that a man who has been told that improper proposals have been made to his wife, has, therefore, the right to slay the person who is charged with having made them.

4. As to the exception that the verdict is against the evidence, etc., the Judge who tried the case, after a review of the whole matter, refused to interfere. Were it not for the fact that the deceased dropped his axe before the shooting, and that defendant seized it after he had shot down the deceased, for the purpose of using it on him, I will admit, for myself,

that the appeal for a new trial would be very strong; but the Judge below having very strongly approved the verdict, we let it stand.

Judgment affirmed.