## WORTHAM *vs.* THE STATE OF GEORGIA.

1. To reduce a killing from murder to voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury upon the person killing. Provocation by words, threats, menaces or contemptuous gestures in no case will free the person killing from the guilt and crime of murder.

2. Upon proof of the killing, the presumption of law is that the crime was murder, and it will be so held, unless reduced by proof to a lower grade of criminal homicide, or shown to be justifiable.

3. To have made this a case of justifiable homicide, the accused was bound to show that the deceased manifestly intended or endeavored to commit a felony upon him. A bare fear will not justify the killing. It must appear that the circumstances were such as to excite the fears of a reasonable man, and also that he acted under those fears, and not in a spirit of revenge.

4. The verdict was quite as light as could have been asked, under the testimony.

April 3, 1883.

Criminal Law. New Trial. Before Judge HARRIS. Meriwether Superior Court. August Term, 1882.

Reported in the decision.

P. F. SMITH, for plaintiff in error.

H. M. REID, solicitor general, for the state.

CRAWFORD, Justice.

The plaintiff in error was charged with the crime of murder; found guilty of voluntary manslaughter; moved for a new trial, which was overruled, and he excepted.

The grounds of the motion are that the verdict is contrary to evidence; strongly and decidedly against the weight of evidence; contrary to law and the principles of justice, and because there is no evidence to authorize a verdict for voluntary manslaughter.

The defence of the plaintiff in error in the court below, rested upon the ground that the killing was not murder, but justifiable homicide. In this court he relies upon the same ground, as also upon the ground that the verdict for voluntary manslaughter cannot be sustained under any view of the evidence, and therefore, should be set aside. The testimony in the record shows that all the parties connected with this homicide were colored people; that the deceased and the accused were the constant and regular visitors of one Maria Dunlap, about whom it is evident the difficulty occurred.

The state, by its witnesses, showed previous threats upon the part of the accused to take the life of the deceased; that they met on the night of the killing, while the accused and Maria Dunlap were walking together; that the deceased asked the accused whether he meant to insult him by what he had said to him that night, to which he replied, "not unless you are of a mind to take it for an insult," when deceased responded that he did not want any fuss, but wanted peace; the accused replied that

he meant business; that the girl then ran off, saying that if they were going to have a fuss, she would leave them, and the pistol fired directly thereafter, the deceased exclaiming, " you have shot me wrongfully," and soon afterwards died, having been shot through the head. It was further shown by the state that the deceased had a stick in his hands, upon which he was leaning back during the conversation between the parties.

The accused, by his witnesses, showed about the same facts, except that Maria Dunlap testified that, when she ran off, the deceased had his stick drawn upon the accused; and by another witness that some half hour after the killing, he found a stick about the size of his wrist, some two feet away from where he found and removed the body. The accused, in his statement, denied the threats, and the words said to have been spoken by him, that he meant business. He admitted the killing, but said that the deceased had first hit him with a stick, which he threw up his hand to catch, but did not, and it struck him, and made a scar which was still upon him, that he struck him a second time, and when he drew his stick the third time to strike, he shot him. Testimony was given to show that the stick said to have been in the hands of the deceased was a weapon likely to produce death.

These were substantially the facts testified to, and stated by the prisoner to the jury, and upon which they made up their verdict of voluntary manslaughter.

To reduce a killing from murder to voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing. Provocation by words, threats, menaces, or contemptuous gestures, in no case, will free the person killing from the guilt and crime of murder.

Upon the proof of the killing, the presumption of the law is that the crime was murder, and it will be so held, unless reduced, by proof, to a lower grade of criminal homi-

cide, or shown to be justifiable. Taking the testimony of all the witnesses, and the accused would be guilty of murder. No one testified to an actual assault upon him, or an attempt by the deceased to commit a serious personal injury upon him. The nearest approach to either was by the witness, Maria Dunlap, who swore that, when she ran off, the deceased had his stick drawn upon the accused, and this, at most, was but a menace, and would not justify a killing. But the jury, evidently giving him the benefit of the doubt, concluded to accept his statement as true in part, and reduced the offence to voluntary manslaughter.

To have made it a case of justifiable homicide, the accused was bound to show that the deceased manifestly intended or endeavored to commit a felony upon him. A bare fear that he was going to do so, is not sufficient to justify the killing. It must appear that the circumstances were such as to excite the fears of a reasonable man; and it must also further appear that he acted under those fears, and not in a spirit of revenge.

Taking the testimony in this case, and with it the statement, it would be hard to believe that the accused was really afraid that a felony was intended, or that the deceased was endeavoring to commit one upon him. And even if this were so, then, under the other facts which were shown, that he acted from his fears, and not in a spirit of revenge. Both are necessary to justify the taking of human life, and the courts and juries should impress it upon those who, for reasons not authorized by law, seize the bloody knife or deadly pistol, and slay an enemy or a rival; not that they fear the commission of a felony upon them, but in a spirit of revenge. Verily, it may almost be said that human life is cheaper and less sacred than any other thing of value. Nothing but a stern administration of the law will increase its value or give it protection. Let it be done.

Judgment affirmed.