## FUTCH *v.* THE STATE.

1. Where a bill of exceptions assigns as error the overruling of a motion for a new trial, the assignment is in effect specific as to each and every ground of the motion. Under the assignment that the verdict was contrary to law and the evidence, it may be insisted in this court that the venue was not sufficiently proved.
2. The venue in a criminal case must be proved beyond a reasonable doubt, like any other fact. The proof in this case was, that the homicide was committed at a point twenty-five or thirty steps distant from a certain house, and that the house was in the county laid in the indictment. Under the ruling in *Gosha* v. *The State*, 56 *Ga.* 36, the venue was not sufficiently proved, it not affirmatively appearing that the place of the homicide was within the jurisdiction of the court.
3. On a trial for murder, where the defence is that the homicide was justifiable, and where neither the evidence nor the statement would in any view of the case warrant a verdict of manslaughter, the court did not err in refusing to give in charge to the jury the sections of the penal code on the subject of manslaughter.
4. Where a witness testified that on the night of the homicide he was in a house about twenty-five or thirty steps distant from the point where the deceased was shot, and that be heard the report

of a gun and cries of distress, it is not allowable for him to testify further that, within a minute after the shooting, another person ran into the house and whispered to him that there was nothing to hurt him, that the accused had shot the deceased. The whispering indicated premeditation rather than spontaneous exclamation, there being apparently nothing to call for lowering of the voice if the speaker was prompted by a natural impulse only. This excludes it from admissibility as a part of the *res gestæ*.

5. Construed in connection with other portions of the charge, an instruction that if the jury believed the killing was done by the accused to prevent the debauching of his affianced wife, and that she was a virtuous woman, it was for them to say whether this stood upon the same footing of reason and justice as other instances enumerated, would not be understood as making his justification depend upon her actual virtue, the court charging further: "If you find that she was a debauched woman and the defendant did not know it, then her lewdness could not be taken in account against him"; and also charging, that if he believed her to be pure and did not know anything to the contrary, it would be for the jury to say whether it was one of those instances enumerated. Whether the charge was not more favorable to the accused than the law entitled him to, is not for decision on this writ of error.

6. The court having charged that a husband would be justified in killing another to prevent the debauching of his wife, it was not error as against the accused to charge that if the defendant killed the deceased to prevent the debauching of his affianced wife, it was for the jury to say whether this would be upon the same footing of reason and justice as the killing by the husband to prevent the debauching of his wife.

7. It was not error to charge the jury: "If you find from the evidence in this case that at the time of the killing Mary Jane DeLoach was in a place of safety and was in no danger at that time of being debauched by the deceased, then the killing of the deceased by the defendant for that reason would not be justifiable."

8. If the accused admits the killing with a deadly weapon, but adds an explanation which might negative malice, no presumption that the homicide was murder would arise on such admission; but if no explanation were added tending to reduce the grade of the homicide, that presumption would arise.

9. Contradictory statements of a witness previously made by him as to matters not relevant to his testimony and to the case, are inadmissible to discredit him. A witness having testified that he was not present at the homicide and knew nothing about it until afterwards informed, is not subject to be discredited by proof of his declarations made after this information was acquired, and tending to show that he had apprehended and given warning of

such and such consequences if a certain witness was dealt with in a certain manner.

10. Where of three persons charged with the same offence one is on trial, it is competent on cross-examination for the State's counsel to ask a witness as to his friendly relations with the other two, and whether he has not lent money to another person, the father of one of these two and the grandfather of the other, to aid in the defence of the person who is on trial.

October 12, 1892.

Criminal law. Evidence. Venue. Murder. Manslaughter. *Res gestœ.* Witness. Before Judge GAMBLE. Tattnall superior court. April term, 1892.

Henry Futch was convicted of the murder of Alfred Kennedy who was killed by him on August 31, 1891. The evidence for the State tends to show that Kennedy was assassinated in pursuance of a conspiracy between the defendant, Mrs. DeLoach and her daughter, Mary Jane, with which daughter the defendant had more than once been criminally intimate, and with whom Kennedy had made an appointment to meet at the buggy-shelter, from which the defendant fired on him as he approached, with a gun loaded with buckshot; and that shortly afterwards the defendant and Mary Jane hauled the dead body to a creek and threw it in there. The defence set up reasonable fears on account of previous threats of Kennedy, a bad, violent man; that the defendant was in charge of the premises of J. A. DeLoach, and seeing a man just outside the dwelling-house at night, he took the gun, went out and called on the man to stop; that at the third call the man turned and advanced toward the defendant who then saw the man was Kennedy; that Kennedy shot at him with a pistol as he advanced, and continued to advance in a stooping position, and when within about fifteen feet the defendant shot and killed him in self-defence; that the removal of the body to the creek was done by Spencer (colored), a witness for the State, who induced the defendant to assist him in the removal; and that Ken-

nedy had already debauched a sister of Mary Jane, and was trying to do likewise with the latter, and defendant, being affianced to her, killed Kennedy to prevent him from carrying out his purpose towards her.

The jury found the defendant guilty. His motion for a new trial was overruled, and he excepted. The more important grounds of the motion are sufficiently shown by the opinion. As to those referred to in the 9th and 10th head-notes, the record shows the following:

J. A. DeLoach, the father of Mary Jane DeLoach, was introduced by the defence, and he testified that on August 31, 1891, he was about a mile away from his home, and was usually absent on business except for two days of the week, that he went home on Tuesday evening, and Wednesday evening was the first time he heard that Kennedy was missing, and that he did not know anything about the killing. His wife and daughter were afterwards arrested for participation in the crime. On cross-examination he admitted that on September 9, 1891, he was at a named place where he saw John H. Jenkins, a justice of the peace. He was asked if he did not say to his wife in Jenkins' presence, " I told you yesterday that if they came and took Spencer out of that field, he would tell enough to put us all in jail," and answered in the negative. To the allowance of the question and requiring an answer, the defendant objected on the grounds, that previous statements of the witness were mere hearsay and expressions of opinion, and were not relevant. Over the same objections the court allowed Jenkins to testify, in rebuttal, that Mrs. DeLoach was talking to him when J. A. DeLoach walked into the room, and she said to him, "I was asking Mr. Jenkins what I should do ; I don't know what to do "; to which DeLoach answered, "I told you yesterday that if they took Spencer out of the field, he would tell enough to put the last one of you in jail."

Over objection that it was irrelevant and not the proper way to show the interest of the witness for the defendant, one Smith was allowed to testify, on cross-examination, that the two women in jail were the daughter and granddaughter of Durrence who was a warm friend of the witness; and to answer the question, whether he had lent money to Durrence to defend Futch.

Hines, Shubrick & Felder, Erwin, duBignon & Chisholm and Lee & Giles, for plaintiff in error.

W. A. Little, attorney-general, and B. D. Evans, Jr., solicitor-general, by J. H. Lumpkin, *contra.*

Simmons, Justice.

1, 2. The accused was indicted and tried in Tattnall county for the murder of Alfred Kennedy, charged to have been committed in that county. The proof was that the homicide was committed at a buggy-shelter, about twenty-five or thirty steps from the house of Mrs. DeLoach, and outside of her lot, and that her house was in Tattnall county. There was no further evidence as to the venue. Under the ruling of this court in *Gosha* v. *The State*, 56 *Ga.* 36, this was insufficient. It was there held that "the venue of a crime must be established clearly and beyond all reasonable doubt; and where there was no positive proof that the offence was committed in the county of Sumter, but the only proof of the place was that it was within fifty yards of a residence in Sumter county, it did not affirmatively appear with sufficient certainty that the crime was committed within the jurisdiction of the court, and therefore a new trial must be awarded." The venue is a jurisdictional fact and must be proved by the State as a part of the general case; otherwise a conviction is unwarranted; and the lack of sufficient evidence of the venue is covered by the exception that the verdict is contrary to law and without evidence to support it.

*Davis* v. *The State,* 82 *Ga.* 205, and cases cited; *Rooks* v. *The State,* 65 *Ga.* 330; *Moye* v. *The State, Id.* 755. Circumstantial evidence, it is true, may be sufficient to establish the venue, but proof of mere proximity to a place in the county, without more, is not such a circumstance as would warrant the inference that the place of the crime was also in the county. The fact that the offence was committed at a point twenty-five or thirty steps from a house shown to be in the county, without any other fact or circumstance tending to show that this place was itself in the county, is just as consistent with its being out of the county as in it. We have looked in vain through the record for any circumstance, outside of this fact, which would tend to show that the crime was committed within the jurisdiction of the court. It does not appear in what part of the county the house of Mrs. DeLoach was situated, whether near the county line or distant from it; for aught we can know from the record, the line may run between her house and the place of the homicide. We are therefore constrained to hold that the jurisdiction is not sufficiently shown, and the verdict must be set aside.

3. The court did not err in refusing to give in charge to the jury the sections of the penal code on the subject of manslaughter. There was no evidence in the case upon which a verdict of manslaughter in any one of its grades could be predicated, and the statement of the defendant excludes any theory of manslaughter. According to his statement, he was in the house of Mrs. DeLoach on the night of the killing, when his attention was attracted by the barking of dogs, and he took his gun and went out. After going a few steps he saw a man and called upon him to stop, but the man kept moving. When he called the third time, the man stopped, drew his pistol and shot at him, and as the smoke cleared away was approaching him, when he

raised his gun and fired. Before he fired he recognized the deceased as Alfred Kennedy, and recalling that Kennedy had threatened his life and believing that he was then attempting to carry out this threat, he killed him in self-defence. There being nothing in the statement nor in any part of the evidence to sustain a hypothesis that the killing was manslaughter, the request to charge on that subject was properly refused, especially as it was so broad in its terms as to include the whole law of manslaughter as contained in the code. See *Jackson* v. *The State*, 88 *Ga.* 784; 15 Southeastern Rep. 677.

4. A witness who testified that on the night of the homicide he was in the house of Mrs. DeLoach and heard the report of a gun and cries of distress, was allowed to state further, that not more than a minute after the shooting, Mrs. DeLoach and the children came running into the house from the piazza, and that she came to him and whispered that there was nothing to hurt him, that Henry Futch had shot Alfred Kennedy. It was objected that this statement of Mrs. DeLoach was hearsay and not admissible as a part of the *res gestæ*, but the judge overruled the objection and allowed it to go the jury.

We think this was error. To except a statement from the rule which excludes hearsay, it must be not merely contemporaneous with the act, but also "free from all suspicion of device or afterthought." Code, §3733. As was said by BLECKLEY, Chief Justice, in *Travelers Insurance Co.* v. *Sheppard*, 85 *Ga.* 775, " What the law altogether distrusts is not after-speech but afterthought. . . That they [the declarations] shall appear to be spontaneous is indispensable, and it is for this reason alone that they are required to be speedy. There must be no fair opportunity for the will of the speaker to mould or modify them. His will must have become

and remained dormant, so far as any deliberation in concocting matter for speech or selecting words is concerned. . . His declarations must be the utterance of human nature, of the *genus homo,* rather than of the individual. . . If the state of his mind be such that his individuality is for the time being suppressed and silenced, so that he utters the voice of humanity rather than of himself, what he says is regarded by the law as in some degree trustworthy." Although this statement may have been made within a minute after the shooting, the manner in which it was made was indicative of at least some degree of afterthought. It was no spontaneous exclamation prompted wholly by the excitement of the instant, the sudden expression of a perception before reflection had intervened, but the voice of the speaker was lowered into a whisper, thus indicating caution and circumspection. Where there is thought of the manner, there may be also thought of the matter. If the words of the speaker sprang from a natural impulse only, there was no reason why the usual mode of speech should have been departed from, at least none that we can glean from the evidence. The language of the code, it will be perceived, lays down a very strict test. It requires that the statement shall be free even from "*all suspicion* of device or afterthought." It is clear that the statement in question does not come up to this test.

5, 6. Several extracts from the charge of the court were excepted to, the substance of which will be found stated in the 5th and 6th head-notes to this opinion. We are not prepared to hold that these charges are correct, but they contain no error of which the accused has a right to complain. They present a theory in his favor, the correctness of which we are not called upon to decide. They authorized the jury to acquit if the deceased did the killing to protect the virtue of a

woman who had engaged to marry him. It was insisted by counsel for the accused that the extracts excepted to are erroneous in failing to present this theory as fully or favorably as the accused was entitled to have it stated. Taking the whole charge, however, and reading these extracts in connection with other portions of it, it will be seen that even if the theory for which the defendant contends be a correct one, he was not hurt by the charges complained of.

7. The exception to the instruction set out in the 7th head-note is based upon the theory above stated. The court charged that if the woman the accused claimed to be his affianced wife was in a place of safety at the time of the killing, and was in no danger at that time of being debauched by the deceased, the killing could not be justified on the ground that it was done to protect her. If for the sake of the argument we assume the law to be that one can kill another to protect the virtue of the slayer's affianced wife, it is also true that the killing must be *necessary* in order to protect her. *Hill* v. *The State*, 64 *Ga.* 453; *Cloud* v. *The State*, 81 *Ga.* 450, 451; *Mays* v. *The State*, 88 *Ga.* 399, 14 S. E. Rep. 561. In this case the killing took place at a point some twenty-five or thirty steps from the house occupied by this woman, and no communication between her and the deceased is shown to have taken place on that occasion; and if we accept the defendant's statement, he killed the deceased to protect his own life. His objection to this charge is therefore untenable.

8. It is complained that the court erred in charging the jury as follows: "It is a law of this State that when a person admits a homicide, the law presumes that homicide to be murder, and the burden is cast upon the defendant to show the homicide to be justifiable."

In his statement to the jury, the accused admitted that he had killed the deceased intentionally and with

a deadly weapon, but as we have seen, this admission was accompanied by an explanation which, if true, would negative malice. While such an admission, without any explanation as to why the killing was done, would give rise to a presumption of malice, no such presumption could be drawn from a statement which admits but at the same time justifies the act. That part of the statement which, if unexplained, would crimi-nate, although it could be received as evidence of the fact it admitted, could not, to the exclusion of another part which qualified and explained it, create a presump-tion that accused was actuated by malice and was guilty of murder. The instruction here complained of was therefore erroneous in so far as it may have been in-tended and understood to apply to the admission con-tained in the defendant's statement to the jury. There was evidence of an admission made to the deputy-sheriff, without any accompanying explanation which would justify the killing, and as to this the instruction would apply.

9, 10. Other grounds of the motion for a new trial are disposed of by the 9th and 10th head-notes. As the case is to go back for a new trial, it is unnecessary to pass upon the remaining grounds of exception.

*Judgment reversed.*