## SULLIVAN *et al. v.* THE STATE.

1. Where it affirmatively appears from the certificate of the presiding judge that he "personally tested the hearing capacity of a juror by asking him questions from the bench in less than an ordinary tone of voice, which questions he readily heard and answered," and that the judge thus became fully satisfied that the juror was not incompetent to serve by reason of defective hearing, this court will not, though affidavits were offered to show the contrary, hold that error was committed in refusing to set such juror aside for cause.

2. While in a legal investigation the declarations of a party accompanying his acts are, when the same are proved by the opposite party, admissible in evidence "to explain conduct and ascertain motives," a party who voluntarily introduces evidence of his own acts, the proof of which is detrimental to his case, will not be permitted to make such evidence a basis for proving declarations in his own favor accompanying such acts.

3. There was no error in rejecting evidence offered by the accused as constituting a part of the res gestæ of the homicide, the same not being a part of the res gestæ thereof.

4. The evidence warranted the verdict; the newly discovered evidence was not such as would have been in the least degree likely to have produced a verdict different from that which was rendered, and there was no error at the trial.

Argued June 21, — Decided July 20, 1897.

Indictment for murder. Before Judge Falligant. Chatham superior court. March term, 1897.

*T. S. Morgan Jr., F. M. Oliver* and *H. D. D. Twiggs*, for plaintiff in error.

*J. M. Terrell,* attorney-general, and *W. W. Osborne,* solicitor-general, contra.

COBB, J. Sullivan and O'Neil were indicted in the superior court of Chatham county, for the murder of Brooks. Having been convicted of voluntary manslaughter, they except to the refusal of the court to grant them a new trial.

The first ground of the motion assigns as error the refusal of the court to set aside for cause a juror alleged to have been incompetent on account of deafness. Accompanying this ground was an affidavit of the juror to the effect, that his hearing was impaired; that he draws a pension from the United States government on account of such defective hearing; that on the last jury he served upon before this, it became necessary to place his chair very near the witness-stand to enable him

to hear distinctly; that since that time he has been regularly excused from jury duty; that on the following day he handed the presiding judge a physician's certificate excusing him from jury duty, which certificate the judge accepted. In rebuttal to this, the State offered a counter-affidavit of the juror, to the effect that he heard distinctly the questions propounded to him on the voir dire, and that if he had been selected as a juror and given a seat near the witness-stand he could have heard all that was said on the trial. Touching this ground, the presiding judge states: "I personally tested the hearing capacity of the juror, asking him questions from the bench in less than an ordinary tone of voice, which questions he readily heard and answered, satisfying me that he could act as a juror. The juror never said that he was too deaf, he thought, to do justice to the case, and while he could hear some of the testimony, there would be much that he could not hear. He was a competent juror, and counsel were not compelled by any action of the court to take or strike this juror any more than any other juror."

On the trial a witness for the accused testified, that a short time prior to the shooting both of the accused came into Lane's barroom to take a drink; that he (the witness) walked over just about the time the accused were drinking, and saw O'Neil give Sullivan a pistol which Sullivan put in his pocket. It was then sought to prove by this witness what the accused said to him at this time, in explanation of their action. This the court refused to permit. Evidence was also sought to be introduced by the defense, that, five or six minutes after the homicide, Sullivan, after running some distance, called a policeman and stated to him that he and O'Neil were crowded by a lot of negroes, and that he had to shoot in self-defense, that he had to run, as the crowd was after him, that he had dodged them on East Boundary street, and that he did not know whether he had shot anybody. Another ground of the motion for a new trial was based on alleged newly discovered evidence.

1. It affirmatively appearing from the judge's certificate to the motion for a new trial, that after a personal examination

of the juror he became fully satisfied that he was not incompetent to serve by reason of defective hearing, this court can not hold that there was error in refusing to allow the juror to be set aside for cause.

2. In all legal investigations the declarations of a party accompanying his acts, when the same are proved by the opposite party, are admissible in evidence for the purpose of explaining such acts, or ascertaining the motive which prompted them; but a party can not, by proving an act detrimental to his case, make a declaration in his favor accompanying such act admissible. Had the State offered testimony going to show that O'Neil just before the homicide gave Sullivan a pistol, and that the latter placed the same in his pocket, it would have been competent for the accused to have offered in evidence their declarations accompanying such acts and explanatory of them. The accused, having offered the damaging evidence, can not be allowed to do away with its damaging effect by his own declaration.

3. The declarations of Sullivan after the homicide were not, upon any principle of law, admissible as evidence. They were certainly not a part of the res gestæ of the homicide, but were rather in the nature of a narrative of what had occurred. *Roach v. Western & Atlantic R. R. Co.*, 93 *Ga.* 785. Nor were they simultaneous exclamations prompted solely by the excitement of the moment. *Futch v. The State*, 90 *Ga.* 472–479. While the time between the homicide and the declaration was short, the manner in which it was delivered and the beneficial evidence it contained could not but raise a suspicion of device or afterthought. Penal Code, § 998; *Hill v. The State*, 48 *Ga.* 608; *Mitchell v. The State*, 71 *Ga.* 151; *Lewis v. The State*, 72 *Ga.* 171; *Searles v. The State*, 87 *Ga.* 167.

4. The evidence warranted the verdict. A finding for murder would not have been unsupported. The alleged newly discovered evidence should not, and most probably would not, have produced a different verdict. There was no error in refusing to grant a new trial.

*Judgment affirmed. All the Justices concurring.*