## MANN v. THE STATE.

1. In the trial of one indicted for murder, where the evidence adduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice and the other upon warranted inferences which negative its existence, then it becomes a question of fact, to be decided by the jury, as to which one of these inconsistent theories is in accord with the real truth of the occurrence. In such a case it is proper to charge the jury that the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, of excuse, or justification, and that it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him.

2. Legal malice is the intent unlawfully to take human life in cases where the law neither mitigates nor justifies the killing. Properly construed, this was the meaning of the charge on this subject given by the trial judge.

3. The charge on voluntary manslaughter submitted to the jury the question of what was "cooling" time.

4. A witness is not to be discredited because of a discrepancy as to a wholly immaterial matter. The charge on this subject, while not strictly accurate, was not harmful to the defendant.

5. The charge complained of as being too restrictive of the use which the jury might make of the argument of counsel is not open to this criticism. The jury could hardly have understood, from the charge given, that the court intended them to reject any impressions of fact made on their minds by a discussion of the evidence by counsel.

6. The evidence sustained the verdict, the trial judge approved it, and no error of law was committed which authorizes a vacation of the verdict.

Argued January 15,—Decided February 15, 1906.

Indictment for murder. Before Judge Roan. Newton superior court. November 18, 1905.

*J. F. Rogers, R. R. Arnold,* and *H. O. Farr,* for plaintiff in error. *John C. Hart, attorney-general,* and *William Schley Howard, solicitor-general,* contra.

EVANS, J. The plaintiff in error was tried upon an indictment charging her with the murder of Lee Pitts, and a verdict of guilty, with a recommendation to mercy, was returned by the jury. Thereupon the accused made a motion for a new trial, which was overruled by the court, and she excepted. Aside from the complaint that the evidence did not warrant the verdict, the motion for a new trial, as amended before the hearing thereon, contained six assignments of error upon the charge of the court.

1. The court charged the jury: "When the killing is proved to be the act of the defendant, the presumption of innocence with which

he enters upon the trial is removed from him, and the burden is then upon him to justify or mitigate the homicide; but, as before charged, the evidence to do this may be found in the evidence offered by the State to prove the killing, as well as by the evidence offered by the defendant." Plaintiff in error contends that the defendant's statement and some of the circumstances appearing in evidence tended to show that the homicide was accidental, and that it was error to charge that if the killing was proved to be the act of the defendant, malice would be presumed from the factum of the homicide. Before examining the prior decisions of this court bearing on this assignment of error, it may not be unprofitable to briefly advert to the common-law rule on this subject. Lord Hale said: "When one voluntarily kills another without any provocation, it is murder; for the law presumes it to be malicious and that he is *hostis humani generis.*" 1 Hale's P. C. 455. In 1 Hawkins' P. C. c. 31, §32, it is declared that "Whenever it appears that a man killed another, it shall be intended, prima facie, that he did it maliciously, unless he can make out the contrary, by showing that he did it on a sudden provocation, etc." Sir William Blackstone, in his Commentaries (4 Bl. Com. 201), said: "We may take it for a general rule, that all homicide is malicious, and of course amounts to murder, unless where justified, excused, or alleviated into manslaughter; and all these circumstances, of justification, excuse, or alleviation, it is incumbent upon the prisoner to make out to the satisfaction of the court and jury; the latter of whom are to decide whether the circumstances alleged are proved to have actually existed; the former how far they extend to take away or mitigate guilt." And in 1 East's P. C. 224, it is laid down, that "the fact of the killing being first proved, the law presumes it to have been founded in malice, unless the contrary appear; all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him. Upon the truth of these facts, so alleged, the jury alone are to decide; but whether, taking them to be true, the homicide is justified, excused, or alleviated is matter of law, upon which the jury ought to be guided by direction of the court." Citations of similar import from common-law authorities might be multiplied ad libitum. These various expressions may be regarded as the statement of a rule of evidence to the effect that if the homicide is

proved and the evidence adduced to establish it shows neither mitigation nor justification, malice will be presumed from the proof of the homicide; but the presumption is a rebuttable one, and may be overcome by evidence of alleviation or justification. If the evidence adduced to establish the homicide presents two conflicting inferences, one of malice and the other an absence of malice, then it becomes a question of fact to be decided by the jury as to which aspect of the evidence is the real truth of the occurrence. As was remarked by Mr. Wharton, the question of proving malice is one of logic and not of formal law. 2 Whart. Crim. Law, §314. Text-writers generally deal with the presumption of malice arising from proof of the homicide as a rule of evidence, rather than a principle of substantive law. See 1 Gr. Ev. §34.

The first discussion of the subject by this court appears in the report of the case of *Hudgins* v. *State,* 2 *Ga.* 188. In commenting on the sufficiency of the evidence to support a verdict of murder, Lumpkin, J., said: "The law presumes every homicide to be felonious, until the contrary appears, from circumstances of alleviation, of excuse, or justification; and it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him." No question was raised as to what would be an appropriate charge under the facts of that case, and the discussion was limited to the point before the court, viz., the quantum of evidence necessary to support a conviction of murder. The point was up in like manner in the following cases: *Roberts* v. *State,* 3 *Ga.* 325; *Choice* v. *State,* 31 *Ga.* 424, 464; *Bird* v. *State,* 14 *Ga.* 54; *Wortham* v. *State,* 70 *Ga.* 336; *Cohron* v. *State,* 20 *Ga.* 752. In *Clarke* v. *State,* 35 *Ga.* 80, the court held that an instruction, that, "when a homicide is proved, the presumption is that the killing is murder, and that it was for the evidence to show justification or to reduce the offense to a lower grade," was unobjectionable. A similar instruction was upheld in the following cases: *Dozier* v. *State,* 26 *Ga.* 157; *Hill* v. *State,* 41 *Ga.* 504; *Wilson* v. *State,* 69 *Ga.* 241; *Bell* v. *State,* 69 *Ga.* 752; *Marshall* v. *State,* 74 *Ga.* 26; *Vann* v. *State,* 83 *Ga.* 44; *Lewis* v. *State,* 90 *Ga.* 95; *Butler* v. *State,* 92 *Ga.* 601; *Dorsey* v. *State,* 110 *Ga.* 333; *Tuggle* v. *State,* 119 *Ga.* 969; *Williford* v. *State,* 121 *Ga.* 173; *Anderson* v. *State,* 122 *Ga.* 175. An examination of the facts of these cases will show that either *all* or *some* of the evidence offered

to establish the homicide demonstrated an unprovoked killing without extenuation. In the first instance, when the fact of a voluntary homicide is shown, unaccompanied by any circumstances of excuse or extenuation, malice is presumed, and the court may so charge. Also, where the homicide is established by evidence some of which excludes any inference of alleviation, while mitigation may be inferred from some of the circumstances, it is proper to instruct the jury that the law presumes malice from the proof of the killing unless the evidence shows alleviation or justification, and leave it to the jury to decide the issue of fact as to whether the killing was with or without extenuating circumstances. As was said by Simmons, J., in *Vann's* case, supra: "If the proof that shows the killing itself discloses that it was done without malice, of course the presumption does not exist; but if the accompanying proof does not, then the burden is thrown upon the defendant to show that it was done without malice." It is not incumbent on the accused to prove an absence of malice where the evidence for the prosecution shows facts. which will excuse the homicide or reduce its grade; and it has been held to be error to charge the jury that if the defendant "struck the fatal blow that killed the deceased, then the law imposed on him the obligation to show he was justified in so doing, and makes the killing murder, and it is on the prisoner to produce evidence of justification to reduce the crime to manslaughter or justifiable homicide if he could by proof." *Crawford* v. *State,* 12 *Ga.* 142; *Reid* v. *State,* 50 *Ga.* 556; *Perry* v. *State,* 102 *Ga.* 366. In *Futch's* case, 90 *Ga.* 472, there appears to be a clear recognition of the principle that the presumption arising from the proof or admission of a homicide is a rule of evidence. In that case the accused in his statement to the jury admitted that he had killed the deceased, but. this admission was accompanied by an explanation which, if true, would negative malice. There was also evidence of an admission of the homicide, made by the accused before the trial, without any accompanying explanation which would justify the killing. The trial judge charged that "it is a law of this State that when a person admits a homicide the law presumes that homicide to be murder, and the burden is cast upon the defendant to show the homicide to be justifiable." This charge, as applied to the statement of the defendant made on the trial, was held to be error; but this court expressly held that the instruction was correct as applied to the ad-

mission of the homicide made by the defendant previously to the trial. This decision was followed in *Perkins* v. *State,* 124 *Ga.* 6. There the only admission of the homicide by the accused was in his statement to the jury, and it was accompanied by an explanation negativing malice. Accordingly, it was held error to charge that "if in the progress of the trial it shall have been shown at any time, *or admitted to you,* that the defendant did kill the deceased, as charged in the bill of indictment, that then the law presumes the killing to be murder, and that presumption remains and exists until, from the evidence in the case, it be shown that a lower grade of homicide than murder is to be found against him, or that the facts and circumstances show a justifiable homicide." The vice in this charge consisted in the instruction that murder would be presumed from the admission of the homicide, made by the defendant in his statement to the jury, when that admission was coupled with an explanation which negatived malice. The principle of the foregoing decisions was applied in *Green* v. *State,* 124 *Ga.* 343, wherein it was recognized that it was "a well-established rule in this State, that, where a killing of a human being is proved, and the evidence adduced to establish the killing does not show circumstances of justification or alleviation, malice will be inferred. But if the evidence relied upon by the State to show the killing contains circumstances of alleviation or justification, the burden of proving that the crime was murder is not shifted." The charge given in that case was held to be inapplicable, because all the evidence introduced to establish the killing, as well as the defendant's statement, showed mitigating circumstances.

From this analysis of the prior adjudications of this court we conclude that in a case where the evidence adduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice and the other upon warranted inferences which negative its existence, then it becomes a question of fact, to be decided by the jury, as to which one of these inconsistent theories is in accord with the real truth of the occurrence. And in such case it is proper to charge the jury as was done in this case. The witnesses for the State testified to facts which excluded all idea of any palliation; the defendant's evidence showed mitigating circumstances; the charge of the court submitted this conflict in the evidence to the jury, and they were told, in substance, that if they

found from the evidence that the homicide was without excuse or extenuation, the killing would be murder. The charge was correct in its statement of the law, and was applicable to the facts of the case. We have discussed this question at length because it was doubted by counsel for the State that the later cases of *Perkins* and *Green* were in line with the older adjudications, and permission was granted to review them. Upon a careful examination of those cases, we are of the opinion that they do not conflict with any prior decision, but are in entire harmony with all previous adjudications on the subject.

Attack was made on another excerpt from the charge, substantially like the one under discussion, on the ground that an instruction that the grade of the homicide might be reduced below that of murder by evidence offered either by the State or the defendant was too restrictive, inasmuch as the jury would have the right to reduce the killing from murder if there was a lack of evidence, or a conflict of evidence, or the witnesses were not credible. From what has already been said on this subject, it is apparent that this exception is without merit. In every case the corpus delicti must be established beyond a reasonable doubt. The jury was so instructed in this case. If the homicide was proved beyond a reasonable doubt, and if from the evidence establishing the homicide the jury found no facts of extenuation, they had a right to imply a felonious killing.

2. Complaint is made of the definition of malice which was given to the jury. In its charge the court said: "Legal malice is an intent unlawfully to take away the life of a fellow-creature in a case where the law would neither justify nor to any degree excuse the intention, if the killing should take place as intended." The criticism is that this charge made the existence of legal malice depend upon facts which would justify or excuse the intention, whereas there would be no legal malice if, under the circumstances of the case, there was mitigation which would reduce it to manslaughter. Every intentional and unjustifiable killing is not necessarily murder; it may be manslaughter. If the charge is to be construed as defining malice to be an intent unlawfully to take human life under circumstances the law would not justify, then it was erroneous. *Dowdy* v. *State*, 96 *Ga.* 653. But this is not a proper construction of this charge. It does not stop with declaring that malice implies

an intent unlawfully to slay under circumstances affording no justification, but it goes further,—"nor to any degree excuse the intention." Unless we say that this last phrase amounts to nothing more than tautology, the exact equivalent of justification, the construction contended for can not be placed on the court's language. The language, "nor to any degree excuse the intention," fairly, by contrast, should be held to refer to mitigation, and the charge to convey the meaning that malice is the intent to take human life in cases where the law neither mitigates nor justifies. The definition given by the trial judge was taken from the case of *Taylor* v. *State*, 105 *Ga.* 746, where it was admitted by counsel to state a correct principle of law, and the court concurred in this view. The criticism now urged was not made in that case. See also *Jones* v. *State*, 29 *Ga.* 607.

3. The court charged literally Penal Code, § 65, defining voluntary manslaughter. This charge is attacked because the court omitted to tell the jury they were the judges of what is cooling time. This assignment is without merit; for the court, in a subsequent part of the charge on voluntary manslaughter, instructed the jury that "what is known in law as cooling time is always a question for the jury."

4. Another ground of the motion for a new trial complains of the following charge: "When an apparent discrepancy exists between the testimony of the different witnesses, it is the duty of the jury to reconcile the whole together, if it can be done, so as not to impute perjury to any one. When witnesses agree as to the important facts testified to, slight discrepancies in the collateral attendant facts afford no ground to discredit them." The error alleged is the invasion of the province of the jury by the court, in that it was for the jury to say what discrepancies in the testimony of a witness should discredit him. This instruction was in the language of a charge delivered in the case of *Cobb* v. *State*, 27 *Ga.* 685, of which the court said, at page 699: "We perceive no error in the charge of the court in laying down the rule for reconciling conflicting evidence." Unquestionably the court must have considered the phrase, "slight discrepancies in the collateral attendant facts," equivalent to "immaterial matters." So construed, the charge was not objectionable; because a witness is not to be discredited simply for the reason that his testimony concerning a

wholly immaterial matter may not be in accord with the truth.
Civil Code, § 5295. We doubt the correctness of the ruling in
*Cobb's* case on this subject, but do not think the instruction, even
if erroneous, ground for a new trial in the present case. The only
variance between the State's witnesses was upon an immaterial
matter, and we are of the opinion that a verdict so strongly sup-
ported by evidence as this one is should not be disturbed because of
a verbal inaccuracy which, under the facts, was not harmful to.
the accused.

5. The last ground of the motion complains of the charge: "The
jury can not act upon their private or personal knowledge of the
question at issue. You try the case from what you hear from this
stand, and from the law applicable thereto, using the argument of
counsel to assist you in understanding the law as applicable to the
evidence." It is counsel's contention that the court restricted the
use of the argument by the jury. When the judge was giving them
this instruction, the evidence had all been delivered and the case
fully argued by counsel. Presumably the case was discussed by
counsel with reference to the application of the facts to the law of
the case. The burden of this instruction was a caution to the jury
to try the case on the evidence and the law, and not to act upon
their personal knowledge of the facts. The jury could hardly have
understood from this charge that the court intended them to re-
ject any impressions of fact made on their minds by a fair and full
discussion of the evidence by counsel. We see no error in this
charge which requires a new trial.

6. A strong case of murder was made out by the State's evidence.
The trial judge approved the verdict, and we do not think any
error of law was committed which authorizes a vacation of the
verdict.          *Judgment affirmed. All the Justices concur.*