## GORDON v. THE STATE.

PER CURIAM. Movant complains that the court erred in charging the jury: "I charge you further, gentlemen, that you look to the defendant's statement in this case and see whether or not the defendant in his statement admitted the killing of the deceased, Bud Yates. Now the circumstances surrounding him at the time he shot and killed Bud Yates, if you find that he did shoot and kill Bud Yates, you must gather from the testimony in the case, all the evidence in the case, and from the defendant's statement. I charge you that should you find that the defendant admitted killing Bud Yates, the law then places upon the defendant the burden of satisfying the jury that he was justified under some rule of law, unless the evidence in the case against him shows justification or mitigation." "Movant assigns this charge as error, for the reason that it was confusing to the jury and misleading to them, in that the court informed the jury 'that should you find that the defendant admitted killing Bud Yates, the law then places upon the defendant the burden of satisfying the jury that he was justified under some rule of law, unless the evidence in the case against him shows justification or mitigation.' For the reason that if the defendant in making the statement or admission referred to in this charge admitted the killing, but at the same time and in the same admission stated facts or circumstances showing justification upon his part, then he would not be required to resort to 'the evidence in the case against him' to show justification or mitigation, as herein charged; and the instructions of the jury herein complained of eliminated from the jury's consideration any statement or admission or confessions made by the defendant as to how the killing was done which showed a justification, and restricted the jury to 'the evidence in the case against the defendant' for him to show that he was justified." *Held:* Under the ruling in *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934), and subsequent cases following that case, this ground of the motion for new trial shows reversible error.

*Judgment reversed. All the Justices concur.*

No. 5665. DECEMBER 21, 1926.

Murder. Before Judge Yeomans. Miller superior court. April 22, 1926.

Tillman Gordon was convicted of the offense of murder. He filed a motion for new trial, subsequently amended the same, and the case is here on exceptions to the judgment overruling that motion. On the trial there was evidence introduced by the State tending to show the defendant's guilt. The defendant introduced no evidence, but made a statement. From the evidence introduced by the State, together with the statement of the accused, the jury were authorized to find that the accused and the deceased, Bud

Criminal Law, 16 C. J. p. 1047, n. 65.
Homicide, 30 C. J. p. 384, n. 9 New.

Yates, met in a public road shortly after noon on Sunday. None of the witnesses testifying in the case were in the immediate presence of the parties at the time of the homicide. Immediately upon the passing of the two automobiles in which the accused and the deceased respectively were riding, they were brought to a stop, and the car in which Yates was riding came back toward the car accused was operating. In a moment two pistol-shots were heard by witnesses testifying in the case, who were a short distance away and who could see the persons in the cars, but could not immediately identify them. One of these persons, afterwards shown to be the accused, was described by witnesses as wearing a red sweater. He left his car opposite the car of the deceased, and the pistol-shots immediately followed. The man wearing the sweater drove away. Several of the witnesses then went to the car that remained, and found the deceased sitting in the driver's seat with his legs crossed, his head reclining with two wounds in the head, apparently made by a pistol, one in front of the left ear and the other behind it. He was dead. The car in which deceased was found was searched by the witnesses, one of whom was the sheriff of the county, and no weapon was found. The man in the red sweater, immediately after the firing was heard, was seen to drink something out of a bottle and then to throw the bottle by the roadside. The bottle was afterwards found, and the evidence tended to show that it had contained whisky. The defendant later in the day delivered a pistol to one Widner with the statement that he had killed the deceased, and that he was compelled to do so because the deceased had cursed him, applying a vile epithet, and had threatened to kill the defendant's father and brother. Later the accused surrendered to the sheriff, making substantially the same statement. In his statement on the trial the accused again admitted the killing and repeated what he had said in regard to the threats of deceased. After detailing the threats, the accused stated to the jury that the deceased "reached with his right hand to get his pistol that was lying right by him on the seat. I was standing by the running-board. I saw the pistol there, and it had a black handle. I can't say whether it was a 32 or a 38 caliber pistol, and as he reached for the pistol I jumped up on the running-board and got the pistol, and he caught my hand this way, and I went around this way with my left hand, and he had

my right arm around this way, and Bud Yates had his head turned something like this, and the pistol fired twice, and I got off of the running-board and throwed the pistol over in the back seat, and I cranked up my car and come on to Sonny Widner's and come on to town and give up to the sheriff. I come right on down to town and went to the sheriff's and stopped my car near the front door, and I went on through all the cages in the jail as far as I could and hollered for the sheriff, and I could not find anybody there, and I went out and cranked my Ford and went to the sheriff's brother's house, and one of his little girls was there, and I asked the little girl where her father was, and she said he was in the house, and I walked in there and told them that I had killed Bud Yates up the road, but that I hated to do it, but that I could not stand and let a man shoot me down after he had said he was going to kill my father and my brother, and he asked me: 'What did you kill him with?' and I said: 'I killed him with his own pistol,' and he asked me what I did with the pistol and I told him that I threw it in his car on the back seat."

Mrs. Gary Maples testified: "I heard Tillman Gordon make a statement to Son Widner. Tillman Gordon said he had played hell that evening, and commenced crying. He said he had killed Bud Yates, and Son Widner asked him what was the matter, and he said that 'Bud Yates said that he had started up the road to kill my father and mother and get Lucy and bring her home and I didn't like it.' Tillman Gordon said that he said: ·'I thank you, Bud, I thank you,' and 'pulled my pistol and went to shooting.' He said that he, Tillman Gordon, pulled his pistol and went to shooting. If I make no mistake I was scared so bad I don't know that I can tell exactly, but to the best of my recollection Tillman Gordon pulled a pistol out and it had two empty hulls in it and three loaded hulls. . . Tillman Gordon said he was coming to town and give up, and pulled the pistol out and handed it to Son Widner. . . He said that Bud Yates said, 'I am going to kill your father, and then I am going to kill your brother,' but did not say which one, 'and I am going to take Lucy,' that was Charlie Yates's wife, 'and if you don't like it I will kill you.'"

Sheriff B. E. Houston testified that the defendant "drove up in front of my brother's in his car and called my brother, and I stepped to the door, and Tillman got out of his car and come on

up on the porch, and he said: 'I want you to go with me to see ·Bud Yates. I have killed him; I killed him a while ago; I shot him twice. I hated to do it, but I could not stand for it, and I have come to give up.'" The sheriff testified he smelled liquor on the defendant's breath; that the defendant said Yates called defendant's father a vile name and said he was going to kill said father; and that defendant said that Bud Yates's pistol was in the car by the side of him, that he picked up Yates's pistol and shot him twice, and that he threw the pistol on the back seat of Yates's car and came off. He further testified: "I searched the automobile. I did not find a weapon of any kind in the automobile. I never went inside of Bud Yates's pockets. I felt on his pockets and found only a little knife in his pockets, and it was shut up." There was evidence tending to show that the pistol used was not the property of· the deceased, and that he did not own and had not for many years owned a pistol. There was, in the testimony of Mrs. Maples, evidence to the effect that Widner owned the pistol or claimed to own it, and that the defendant returned it pursuant to a promise to either return it or pay for it, the weapon having been sold to him by Widner.

*W. I. Geer,* for plaintiff in error.

*George M. Napier, attorney-general, B. T. Castellow, solicitor-general, T. R. Gress, assistant attorney-general, R. R. Arnold,* and *E. C. Hill,* contra.