19177.  JONES *v.* THE STATE.

A<small>RGUED</small> J<small>ANUARY</small> 19, 1956—D<small>ECIDED</small> F<small>EBRUARY</small> 15, 1956.

*Henry A. Stewart, Sr.,* for plaintiff in error.

*Robert J. Noland, Solicitor-General, James I. Parker, Assistant Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

HEAD, Justice. ■ "If the accused admits the killing with a deadly weapon, but adds an explanation which might negative malice, no presumption that the homicide was murder would arise on such admission; but if no explanation were added tending to reduce the grade of the homicide, that presumption would arise." *Futch* v. *State,* 90 *Ga.* 472, 473 (8) (16 S. E. 102); *Perkins* v. *State,* 124 *Ga.* 6 (52 S. E. 17); *Green* v. *State,* 124 *Ga.* 343 (52 S. E. 431); *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (NS) 934). "Where the evidence relied upon by the State to establish the fact of the homicide discloses circumstances of mitigation or justification, such evidence does not raise a presumption of malice." *Surles* v. *State,* 148 *Ga.* 537 (97 S. E. 538); *Gordon* v. *State,* 163 *Ga.* 388 (136 S. E. 144); *Mullis* v. *State,* 196 *Ga.* 569, 580 (27 S. E. 2d 91); *Myrick* v. *State,* 199 *Ga.* 244, 248 (34 S. E. 2d 36).

The only evidence in the present case introduced by the State to prove that the defendant committed the homicide was the testimony of officers that the defendant had made statements to them admitting the homicide. These admissions negatived malice and included the defendant's contention that he shot the deceased in self-defense, and at a time when the deceased was advancing upon him with a knife. The State's evidence, therefore, discloses circumstances of mitigation or justification and such evidence does not raise a presumption of malice.

The daughter of the defendant (the wife of the deceased) testified that she saw the homicide, and that the deceased was attacking the defendant before the shooting occurred. The evidence showed that the defendant is a small, crippled man, about 64 years old, and that the deceased was a large man, about 34 years old. An open knife was found in the bed where the deceased had been, and a bullet hole was found in the ceiling of the room. The defendant claimed that the deceased was advancing on him with an open knife, and that he shot the first time into the ceiling of the room, hoping to stop the deceased from his attack on him.

In the brief of the solicitor-general it is insisted that there was testimony in the case that the bullets entering the body of the deceased traveled downward, and since the evidence showed that the defendant was eight inches shorter than the deceased, this testimony would prove that the defendant shot the deceased while the deceased was in bed, and would refute the defendant's claim that he shot in self-defense. The physician (qualified by the State as an expert) who saw the deceased on his arrival at the hospital testified that he could not tell the direct path of the bullets without performing an autopsy, which was not done. The testimony upon which the State relies is that of an undertaker. A careful consideration of his testimony in its entirety demonstrates that it is too vague, uncertain, and contradictory to establish any fact material to the issue. The deputy sheriff called as a witness for the State testified that he was a graduate of the FBI Academy in Washington, where he qualified as an expert in the use of fire arms; he further testified that the angle at which a bullet strikes a body can not necessarily be determined if the bullet should strike an object to deflect it, and that the bullet which killed the deceased struck the breastbone and was deflected.

The State also relies on the fact that the defendant was armed at the time of the homicide. This fact, however, must be considered in the light of the facts preceding the homicide. From the defendant's statement, and the State's witnesses, it appears that the defendant was reluctant to go to the home of the deceased, that he first tried to procure a police officer to accompany him to the home of the deceased, and upon being informed that the police had no authority to do so, he then went to several places trying to procure a deputy sheriff to go with him. The deputy sheriff could not be located. The deceased had abused his wife (the defendant's daughter) and both the daughter and the defendant's wife were greatly concerned for the safety of the daughter's seven children in the home with the deceased, and they persuaded the defendant to go with them to get the children. The great disparity in the physical condition of the defendant and the deceased may well have suggested to the defendant the need for some protection in the event the deceased should attack him. The facts and circumstances in their entirety do not indicate any wilful or deliberate intent on the part of the defendant to take the life of the deceased.

The defendant introduced a number of witnesses who testified that his general reputation and character were good, among these being his physician, the Chief of Police of Cedartown, the deputy sheriff investigating the homicide, a justice of the peace, and eight other citizens.

In the present case no presumption of malice could arise under the testimony regarding the statements of the defendant. The circumstantial evidence was not sufficient to supply this necessary element in proving the crime of murder, and the trial judge erred in overruling the general grounds of the motion for new trial. *Manning* v. *State*, 153 *Ga.* 184 (111 S. E. 658); *Miller* v. *State*, 184 *Ga.* 336 (191 S. E. 115).

■ The only special ground deals with a charge of the court on the consideration that the jury might give to the disparity of size between the deceased and the defendant. We have carefully examined this extract from the charge and find it not subject to the objections urged. *Fickling* v. *State*, 166 *Ga.* 487, 489 (143 S. E. 430).

*Judgment reversed. All the Justices concur, except Duckworth, C. J., Candler and Hawkins, JJ., who dissent.*

HAWKINS, Justice, dissenting. I dissent from the ruling in the 1st division of the opinion and from the judgment of reversal, because the jury was authorized to infer malice upon proof of the killing by a deadly weapon.

I am authorized to say that Mr. Chief Justice Duckworth and Mr. Justice Candler concur in this dissent.