### BURLEY *v.* THE STATE.

1. In the trial of one for murder, any pertinent fact which, of itself or in combination with other circumstances, tends to show a motive for the defendant to commit the crime charged against him is relevant. In passing on an objection to testimony of this character, a remark by the court, that the solicitor states that he wishes to show the motive of the defendant, is not tantamount to an expression of opinion that the testimony to which objection is made is sufficient to show motive on the part of the defendant.

2. An instruction in a criminal case that the "charge as made by the grand jury, on the one hand, and his [the defendant's] plea of not guilty thereto on the other, forms an issue, and you are now trying the truth of that issue," is but a statement in general terms that the charge, as described in the indictment, and the defendant's plea of not guilty form the issue in the case, and does not place the grand jurors in the attitude of prosecutors.

3. In the trial of one indicted for murder, where the evidence to establish the homicide shows circumstances indicating that the slayer was actuated by malice, it is proper to charge the jury that the law presumes every homicide to be malicious until the contrary appears from circumstances of alleviation, excuse, or justification, and that it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him.

4. A defendant can not invoke an instruction upon the law as applicable to a particular phase of his case, and thereafter demand a new trial because of the inapplicability of the instruction. If, in compliance with such request, the court's charge be not technically accurate, and the inaccuracy is of such a nature that it is manifestly harmless, a new trial will not be granted on this account.

5. A charge, "If you are satisfied of the guilt of the defendant to a moral and reasonable certainty, and beyond a reasonable doubt, from the evidence, that he [the defendant] is guilty of murder, it would be your duty, and you would be authorized to find him guilty," is not open to the objection that it amounts to a judicial invasion of the province of the jury.

6. In the trial of one charged with murder, where the evidence relied on to convict is not wholly circumstantial, it is not error requiring a new trial for the judge, immediately after instructing the jury upon the particular punishments fixed by the law as a consequence of verdicts of guilty with and without recommendation, to add that "the court would have no power to change it, if it desired to do so."

7. The court fully charged on the defendant's contention that he did not slay the deceased. Assignments of error not specially noticed are without merit. The deceased, according to the evidence introduced by the prosecution, was wilfully slain by the defendant. We find no error requiring the grant of a new trial.

Argued January 20,—Decided March 25, 1908.

Indictment for murder. Before Judge Roan. DeKalb superior court. November 16, 1907.

*J. D. Kilpatrick,* for plaintiff in error. *John C. Hart, attorney-general,* and *William Schley Howard, solicitor-general,* contra.

EVANS, P. J. Fletcher Burley was convicted of the murder of Tom Walker; he made a motion for a new trial, which was overruled, and he brings error. There was evidence from which the jury could find these facts: The homicide occurred at a hall where a dance party was in progress. The deceased, soon after entering the hall, seated himself beside one Mary Seals. The defendant was this woman's escort to the dance hall. The defendant, accompanied by one of his intimate associates, approached the deceased and demanded "what he was doing by his girl," and without provocation attacked the deceased with knives. Others joined

in the assault on the deceased, who was stabbed several times and struck with thrown objects and by the fists of his assailants. The deceased succeeded in escaping from the house, and his dead body was discovered the next morning a few feet from the dance hall. The defendant was seen to stab the deceased in the breast, and a physician testified that the wound in the breast caused the death of the deceased.

1. Over the defendant's objection that the testimony was irrelevant, a witness was allowed to testify that the defendant had been frequently seen in company with Mary Seals. The testimony was relevant, and, in connection with other circumstances, it tended to show that the defendant's assault upon the deceased was apparently provoked by a fit of jealousy aroused by the deceased taking a seat by the woman. The defendant was her escort to the dance that night. When he observed that the deceased was sitting by this woman, he cursed the deceased and demanded "what he was doing by his girl." His conduct and speech reflected his resentment towards the deceased for taking a seat by this woman, and the testimony to which objection was made tended to show that his anger was kindled and inflamed by the passion of jealousy, and that this was the motive which actuated him in committing the homicide. In ruling on this objection, the court remarked that the solicitor-general said he wished to show the defendant's motive, and unless he made it appear that the testimony was relevant he would rule it out. The remark of the court is excepted to as being an intimation of opinion that the testimony was sufficient to show motive. We do not see how such an import could be given to the language of the court. What was said was nothing more than the court's reason for the ruling invoked, and it has been held that the court may state his reason why testimony should be allowed, if what he says is not calculated to prejudice the jury. See *Walker* v. *State*, 124 *Ga.* 97 (52 S. E. 319).

2. In the course of his instructions to the jury the court said: "The charge as made by the grand jury, on the one hand, and his [defendant's] plea of not guilty thereto on the other, forms an issue, and you are now trying the truth of that issue." The exception to this excerpt is that the grand jurors are put in the attitude of prosecutors, and the effect was to give prominence to the prosecution, and to belittle the defense. This exception is not

well taken. The pleadings in a criminal case consist of the indictment (containing the names of the grand jurors and a statement of the specific crime charged against the accused) and the defendant's plea. The language complained of amounted to nothing more than a statement of the issue submitted to the jury.

3. The court charged: "If the homicide (that is, if the killing) is proved in this case, if the evidence offered by the State shows you that the defendant is the person who committed the act,—that is that the person killed was killed by the defendant,—then the State has met this presumption of innocence, and the burden is put upon the defendant to show you that the homicide was done either under circumstances of mitigation or justification. The evidence to do this, however, may come from the evidence offered by the State to prove the homicide, or from the evidence offered by the defendant, or from the defendant's statement." "When the killing is proved to be the act of the defendant, the presumption of innocence with which he enters the trial is removed from him, and the burden is then upon him to justify or mitigate the homicide; but, as before charged you, the evidence to do this may be found in the evidence offered by the State to prove the killing, as well as by the evidence offered by the defendant, or the defendant's statement. You are to try this case under all the evidence offered." While perhaps the phraseology employed by the same judge in *Mann's* case, 124 *Ga.* 960 (53 S. E. 324, 4 L. R. A. (N. S.) 934), to which reference is made in the third division of the syllabus, is more technically accurate than these quoted extracts, yet there is no such substantial difference between them as to require a new trial. *Wilson* v. *State,* 69 *Ga.* 224 (9); *Johnson* v. *State,* 130 *Ga.* 27 (60 S. E. 160).

4. The 13th and 14th grounds of the motion contain long excerpts from the charge defining justifiable homicide, which are excepted to as mingling and confusing Penal-Code sections 70, 71, and 73, and as not adjusted to the real defense of the accused. We have carefully examined the charge and fail to discover that the court charged section 73 of the Penal Code. The only testimony which even remotely suggested a charge on justifiable homicide came from one of the defendant's witnesses, who testified, that he "was in the hall when Tom [the deceased] got killed. Tom was sitting down by a girl. Fletcher [the defendant] walked

up to them. Tom jumped up with his hand in his hip-pocket. Son Nance walked up and took it up. Saw Rob Seals and Tom Starr have knives; do not think Fletch was about Tom Walker; could not hear what Fletch said to Tom; did not hear Fletch cuss Tom Walker; saw Son Nance with a bottle. I did not see any licks passed." In his statement the accused denied any participation in the homicide. But his counsel requested the court to instruct the jury on the law of justifiable homicide. The defendant can not invoke an instruction on the law as to a particular phase of the case on trial, and thereafter complain of the inapplicability of his request. *Threlkeld* v. *State,* 128 *Ga.* 660 (58 S. E. 49). The court certifies that though the particular instruction given was not requested, the defendant's counsel did request that he charge the jury on the subject of justifiable homicide. The charge respecting justifiable homicide was not erroneous; and even if it was unauthorized by the evidence, the defendant should not be given a new trial because the court at his instance gave him the benefit of a defense to which he was not entitled by the evidence. The court instructed the jury that if the defendant did not kill the deceased, he should be acquitted.

The defendant's counsel also invoked an instruction on the law of voluntary manslaughter. The court's charge on this subject was not technically accurate. In explaining the elements of this grade of homicide, his honor charged that a "serious personal injury," as used in the Penal Code, §65, meant "a bodily injury, and not a personal affront or personal wrong; an injury that may deprive of life, and which must be prevented by a resistance of like sort." This language was taken from the opinion in the case of *Thompson* v. *State,* 24 *Ga.* 297; but, as has been frequently observed, not every expression found in an opinion by the Supreme Court may be given in charge. In that case the court was demonstrating that a serious personal injury as used in the statute meant a bodily injury; the gravity or seriousness of the injury was not up for decision. The inaccuracy is patent. Where an attempt is made by the person killed to commit a serious personal injury on the person killing, it is not essential to reduce the grade of homicide to voluntary manslaughter that the attempted injury shall be one that may deprive of life. But the error was harmless. This is so for the reason that neither the evidence nor the prisoner's

·statement warranted a charge on voluntary manslaughter, and the inaccuracy in defining this grade of homicide could not possibly have any injurious effect on the accused. Under the evidence, the defendant was guilty or not guilty of murder, and this charge ·was harmless.

5. That portion of the charge stated in the fifth division of the ·syllabus is not subject to the criticism made of it. *Addis* v. *State,* ,120 *Ga.* 180 (47 S. E. 505).

6. The court charged: "If the jury should find the defend-·ant guilty, and in the exercise of the discretion left with them by ·the law, and should recommend .the defendant to life imprisonment, that is imprisonment in the penitentiary for life, the form ,of your verdict in that event would be, we the jury find the defendant guilty, and recommend that he be punished by imprison-·ment in the penitentiary for life. If that be your verdict, gen-·tlemen, that would be his punishment. The court would have no power to change it, if it desired to do so." The last sentence in this excerpt is excepted to as being an intimation of an opinion that the death penalty ought to be inflicted, and would be inflicted if the court had the power to do so. Immediately preceding this instruction. the court had charged the jury that a verdict of guilty, without recommendation, would necessitate the infliction of the ·death penalty. The court's instruction as to the effect of a verdict of guilty, and one of guilty with a recommendation, was clear .and explicit, and the sentence objected to, when considered in connection with its context, could not fairly create any other impres-·sion but that the court meant that the law fixed the punishment ,consequent upon the particular verdict, and not the judge. See the Penal Code, §63, as to punishment of murder.

7. We have carefully considered the other grounds of the mo-·tion, and do not think any error is made to appear. The complaint that the real defense of the plaintiff in error, that he did not slay the deceased, was blighted by judicial oversight is not well founded. Almost the last words which fell from the lips of the judge was an instruction that if the defendant did not kill the deceased a verdict of not guilty should be returned. The evidence warranted the verdict, and we find no error in the record · requiring a new trial.

*Judgment affirmed. All the Justices concur.*