## SMARRS, alias McLAUGHLIN, v. THE STATE.

1. The evidence of the alleged inculpatory statement of the accused was properly admitted.

2. After instructing the jury as to the presumption of malice arising from proof of a homicide, it was not error to charge, in this immediate connection, that evidence of justification or mitigation "may come from the evidence offered by the State to prove the killing, . . or it may come . . from the evidence offered by the defendant, or it may come from the defendant's statement, if you should credit it;" such charge

being followed by full and correct instructions as to the prisoner's statement and as to reasonable doubt.

3. A charge that "there can not be murder without malice, either express or implied, that is, with a deliberate intent to kill; there can be no manslaughter when there is any malice, either express or implied," was not fairly subject to the criticism that it led the jury to believe that where there is a deliberate intention to kill, or malice on the part of the accused, he must be found guilty of murder, without regard to whatever else may appear in connection with the homicide. Especially was this criticism without merit when such charge was given in immediate connection with correct instructions defining murder, malice as an essential element thereof, and voluntary manslaughter, and explaining the distinctions between such offenses.

4. In instructing the jury on the law of voluntary manslaughter, it was error to charge that a "serious personal injury," referred to in Penal Code, § 65, means "an injury that may deprive of life, and which must be prevented by a resistance of the like sort."

5. It was also error to charge, under the facts of this case: "If one man approaches another with a knife or pistol, or a weapon like that, and the man being approached honestly believed that his life was in danger, and he did not provoke the difficulty, and the man is coming on him to take his life, or he honestly believed his life was in danger, or a serious personal injury is about to take place to him amounting to a felony, and he kill another under those circumstances, to protect himself from that kind of an assault, that would be justifiable homicide."

6. Mere words, however vile, will not justify the taking of human life.

7. It was not error to give in charge the provisions of Penal Code, § 71, on the subject of reasonable fear.

Submitted May 18,—Decided July 14, 1908.

Indictment for murder. Before Judge Roan. Clayton superior court. March 31, 1908.

Walter Smarrs, alias McLaughlin, was convicted of murder; and his motion for a new trial having been overruled, he excepted. According to the testimony of Jim Lavender, an eye-witness of the homicide, sworn in behalf of the State, a number of negroes, including the accused and Bud Nash, the deceased, were picking cotton at night, by moonlight. They were all friends and in good humor. Just after they had quit picking and as they were starting for home, the accused said, "Who is it believes I won't bust 'em?" Bud Nash said, "I don't believe it;" and the accused "just let in to shooting. He shot him [Bud Nash] with a pistol. He shot him twice; he shot at him three times. The first shot it seems he aimed down at his feet; the second shot he made he shot him in his thigh; the third shot he shot him in his side." Nash was killed by the shots. He said nothing, except as above stated,

to provoke the shooting, nor did he do anything or attempt to do anything to the accused before the shooting. He had nothing in his hands. He was a fourteen-year-old boy. The record does not disclose the distance that Nash was from the accused when the latter shot him, though this fact was shown to the jury by a witness stating the distance to be about as far as from himself to a given object in the court-room. The accused was presumably a grown man, as he was married. Mack Crawford, a witness for the State, testified: "Some of the boys went out in the pines, and made up a fire to warm. While they were out there, I, just in the way of teasing the boys, pitched a rock over in the pines. Walter [the accused] picked up one and threw it, and when he threw it the boys scattered about the fire, and Jim Lavender said, 'Who threw that rock down here?' Some of them said, 'Walter Smarrs.' He said, 'That was a dangerous rock; it liked to hit me.' So we had a word or two over that, and they all kept laughing and picking cotton." · This witness left the field soon afterwards, and when about a hundred yards away he heard the shooting. He immediately returned and found Nash had been shot and killed. He followed the accused, and when he came up with him the accused said: "How is Bud shot?" The witness replied, "The boy is dead." The accused said, "Well, damn him, I meant to kill him." He said, "The first shot I made at him, I shot down at his feet, and the next shot I aimed higher, and the next one I placed it right on him." The witness said, "Well, you sure ought not to have done that." The accused responded, "Well, they have been imposing on me." The witness testified, "That was about all that was said concerning it; he did not call any names." J. D. Stanley testified, in behalf of the State, to a conversation he heard between the accused and another person after the homicide. A portion of the testimony of this witness is reported as follows: "The defendant said he did not aim to kill the boy. He said the boy was off something like as far as that [indicating], and he got off a little further and told him to hush up, and the boy just remarked to him, 'You make me hush up,' and he said he took a shot at him, I think maybe he shot about his feet. Walter went on to state to him [the person with whom he was conversing] that he thought he would see the boy run, and he would not run, and he shot at him, and he shot him somewhere about the thigh, and he just de-

cided he had better shoot him again, and he shot him and killed him. . . He told him he had a knife in his hand, the boy had a knife in his hand, and he was about as far as to that stove. . . Yes, he said the boy was advancing on him with a knife." The witness testified, that he heard all of the conversation, and neither he nor the person to whom the accused was talking did or said anything to induce the accused to say what he did; that he made the statement solely in response to the question propounded to him, "What did you kill that boy for?" Another witness for the State testified, that the accused told him that he killed the boy "for nothing on top side of the earth;" that he "didn't have aught against this boy, and never did have."

The accused introduced no witness. His statement was as follows: "Well the first starting of this was, Mr. Mack Crawford threw a rock down in the pines where the boys were. The boys had went down there in some little pines. He threw the rock down there. I reached down and picked up a rock, and he told me not to pitch that thing down there where they was. I throwed one rock down there, and the boys come out and got after me about it; looked like they were going to jump right on me. I told them I throwed one and did not mean any harm. They just kept on growling around about it, and we went on back to cotton picking. This little Nash boy, he said—he told me that the man that threw that last rock down there was a son of a bitch, and if he took it up he would get a fight; and he started at me with a knife, and I shot him. That is all I know about it."

*W. L. Watterson* and *Joseph W. & John D. Humphries,* for plaintiff in error. *John C. Hart, attorney-general,* and *William Schley Howard, solicitor-general,* contra.

FISH, C. J. (After stating the foregoing facts.)

1. The testimony of J. D. Stanley, set forth in the foregoing summary of facts, as to the alleged inculpatory statement of the accused, was properly admitted over the objection "that no proper foundation for admitting confessions had been shown, and that in admitting this testimony the jury were led to believe that the defendant had made a confession of his guilt, when in point of fact he had not." It does not appear that such statements were admitted as a confession of guilt; and the court did not consider them as such, for no instructions were given on the subject of confes-

sions. If, however, they could be considered as a confession, it appears that they were made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury..

2. The court charged the jury as follows: "If it is shown here that the party alleged to have been killed was killed by the defendant, if he shot him with a pistol, as charged in the indictment, and if it is shown to have been in this county, some time previous to the time this bill of indictment was found, if all that appears, then the burden is on the defendant to show some fact, either to justify the killing or to mitigate it, that is to say, to justify the killing altogether or to mitigate it so as to reduce the grade of the homicide. Now, I charge you, that the evidence to do this, that is to say, to justify or mitigate it, may come from the evidence offered by the State to prove the killing, or the evidence offered by the State in making out its case; or it may come, gentlemen, from the evidence offered by the defendant; or it may come from the defendant's statement, if you should credit it." The errors assigned upon this charge were: (1) that it "led the jury to believe that when the killing itself was shown by the State, . . the obligation was on the defendant to point out from the testimony in the case particular facts or things which might otherwise be considered by the jury in mitigation of the offense;" and (2) that it required "the jury to actually credit . . the statement of the defendant before they would be authorized to give the same such consideration as might be necessary to mitigate or reduce the homicide from murder to some lower offense, or to justify an acquittal of the defendant," whereas such statement might be sufficient to create such reasonable doubt in the minds of the jury as to authorize an acquittal, or a verdict for a lower grade of homicide than murder, even though the jury might not credit the statement.

While the principle involved in the charge might have been more aptly expressed (see *Mann* v. *State*, 124 *Ga.* 760, 53 S. E. 324, 4 L. R. A. (N. S.) 934; *Burley* v. *State*, 130 *Ga.* 343, 60 S. E. 1006), the objections to the charge are without merit. The first objection deserves no further comment. As to the second, we will only say that it is difficult to understand how the jury could give the prisoner's statement any effect whatever if they believed it unworthy of credit. Moreover, the court followed this charge with

full and correct instructions as to the prisoner's statement and reasonable doubt.

3. Error was assigned upon the following charge: "There can not be murder without malice, either express or implied, that is, with a deliberate intent to kill. There can be no manslaughter when there is any malice, either express or implied." The objections to the charge were: (1) that "it led the jury to believe that where there is a deliberate intention to kill, the defendant must be found guilty of murder," whereas a deliberate intention to kill may exist under circumstances which might justify the killing or grade it below murder; and (2) "that it led the jury to believe that should the accused have had malice toward the deceased, he must be found guilty of murder," whereas "malice may exist on the part of the accused toward the deceased, and at the same time the defendant may be justified in the killing, or may be guilty only of a lesser offense than murder." The court, in immediate connection with this excerpt from the charge, defined to the jury the crime of murder, the meaning of malice as an essential element thereof, and the offense of voluntary manslaughter, and the portion of the charge now under consideration was merely explanatory of the distinction between murder and voluntary manslaughter. We do not think the charge complained of, especially when considered in the connection in which it was given, was calculated to impress the jury as claimed in the exceptions. For the judge to inform the jury that "there can not be murder without malice, either express or implied, that is, with a deliberate intent to kill," is far from instructing them that they must convict of murder whenever malice or a deliberate intent to kill is shown, without regard to whatever else may be made to appear in connection with the homicide.

4. In connection with instructions defining voluntary manslaughter, the court charged: "The serious personal injury spoken of means an injury greater than a provocation by mere words, and less than a felony. . . It means a bodily injury, and not a personal affront or personal wrong; an injury that may deprive of life, and which must be prevented by a resistance of the like sort." One of the exceptions to the charge is, that it was calculated to lead the jury to believe that the only attack upon the accused which could reduce the homicide from murder to a lower offense

was an injury which might deprive him of life and which had to be prevented by a resistance of a like sort. This exception was well taken. A similar charge was under consideration in *Burley's* case, supra, and was there held to be erroneous, but harmless, as in that case neither the evidence nor the prisoner's statement warranted a charge on voluntary manslaughter and therefore an inaccuracy in defining that grade of homicide could not have injuriously affected the accused. We can not say, however, that voluntary manslaughter was not involved in the present case.

5. Another charge complained of was: "If one man approaches another with a knife or pistol, or a weapon like that, and the man being approached honestly believed that his life was in danger, and he did not provoke the difficulty, and the man is coming on him to take his life, or he honestly believed his life was in danger, or a serious personal injury is about to take place to him amounting to a felony, and he kill another under those circumstances, to protect himself from that kind of an assault, that would be justifiable homicide." The assignment of error upon this charge is, that "it in effect instructed the jury and led them to believe that when a man provokes a difficulty, he can in no event justify the killing of the party with whom the difficulty is provoked, when, as a matter of law, one may provoke a difficulty, which provocation may be met with such violent attacks by the party provoked as to be out of proportion to the provocation offered, and of such a character as to justify the person provoking the difficulty in killing the person provoked, or to reduce the killing from murder to some lower offense." Under the facts of this case, this exception was also well taken. In *Butler* v. *State,* 92 *Ga.* 601, 606 (19 S. E. 51), the legal principle here involved was thus announced: "Where it is said in the decisions of this court that before a homicide can be treated as justifiable it must appear that the slayer was 'free from fault,' or did not 'provoke the difficulty,' this is to be understood as meaning, not that he must not have done anything which might in the ordinary sense of the word be regarded as provocation, but that the provocation must not have been such as would in law be sufficient to justify the attack against which he was defending himself when the homicide was committed. Anything short of such provocation as this would not put the slayer in any degree in the wrong if it became necessary to kill in his

own defense." Citing *Boatwright* v. *State*, 89 *Ga.* 140 (15 S. E. 21). See also *Fussell* v. *State*, 94 *Ga.* 78 (19 S. E. 891). In the case now in hand the jury may have considered that the accused provoked the difficulty by throwing a rock which fell near the fire at which the boys, or some of them, were warming. If the deceased, by reason of the throwing of the rock by the accused, attempted to commit a felonious assault upon him, and the accused killed the deceased to prevent such an assault, then the homicide was justifiable, for such provocation by the accused could not justify the felonious assault against which he was defending himself.

6, 7. The court did not err in charging, in effect, that mere words, however vile, will not justify the taking of human life; nor in instructing the jury on the doctrine of reasonable fear in the language of the Penal Code, §71.

The judgment refusing a new trial must be reversed for errors in the charge as shown in the fourth and fifth divisions of this opinion.

*Judgment reversed.   All the Justices concur.*