## SCREVEN *v.* THE STATE.

No. 6997.   NOVEMBER 14, 1929.

*E. J. Goodwin* and *H. G. Dukes,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general, T. R. Gress, assistant attorney-general,* and *Julian Hartridge,* contra.

RUSSELL, C. J.   Renty Screven was convicted of the offense of murder, and was sentenced to be electrocuted. He filed a motion for a new trial, based upon the general grounds and six grounds which were added by amendment. The motion was overruled, and error is assigned upon that judgment. The evidence in behalf of the State was to the effect that the defendant, after telling a witness he "had four people to kill this time to-night," went to the house

where his daughter, Rosa Screven, was staying, and, as his daughter came out upon the porch, called out, "Is that you, Rosa?" Upon receiving an affirmative answer he fired his pistol twice at his daughter, inflicting wounds which caused her death in about an hour. As related by a witness for the State, a city detective of Savannah, the defendant made to him the following statement after his arrest in Charleston, South Carolina, to which city he had fled after the homicide: "Screven told me that he and his wife had been separated about three weeks; that they had had an argument, and his wife was upholding his daughter in keeping a man staying with her at the house, a married man, and he objected to it; that he and his wife got in an argument, and that he, Screven, left, staying about three weeks; that on September 3, 1926, in the morning, on his way to work he met his wife on the railroad-tracks not far from Pearl Street; she asked him to come back; he said he would not as long as this man stayed with his daughter; that she then cursed him, called him a bastard. This was about seven o'clock in the morning. He said he made up his mind, 'I will get you,' that he would kill the pair of them, meaning his wife and daughter. He went on to work, and that weighed on his mind all day; the more he thought of it the more determined he was to kill them. That night he went home and got his pistol and cleaned it up so that it was in good working condition, and took along a handful of extra bullets with him, and at 8:55 o'clock he went by this house where his wife was staying on Pearl Street, and he saw a girl standing on the porch. He said at that time his daughter was going with another girl in the neighborhood about the same size and color, and he didn't want to make any mistake. He said, 'Is that you, Rosa?' and she said, 'Yes,' and at that time he shot at her three times, and she screamed and went into the doorway, and he left and went down Pearl Street to the Coast Line tracks where he got down into the ditch, and he saw the policeman and the detectives and the ambulance come and carry her to the hospital." In his statement the defendant recited the troubles he and his wife and daughter had, growing out of the failure of his efforts to keep his daughter from living with a married man, Reuben Hall, who had threatened him two or three times. His daughter had taken his two insurance policies of which she was named beneficiary, and he wanted to change the beneficiary. On the morning preceding the

night when the homicide occurred he met his wife, who had a 32-caliber pistol under her apron and told him, "You got to come back to me." He replied that on account of the way she and his daughter were doing he did not want to "have anything to do with you." She "pulled" the pistol at him and said, "God damn you; if I don't benefit from your labor, nobody else will." He went on to his work; and that afternoon his wife told him if he would come to the house where she and his daughter were staying, they would give him his policies. He took his pistol because the people living in the house had threatened him. "Rosa and Francis' daughter were coming out the door, and I was as close to them as the back of the wall, and I said, 'Is that you, Rosa?' She screamed and dashed back in the house, and I saw a man come out the house from the light in the door, . . and I shot. I did not go there intentionally to kill Rosa or anybody else. I went there to get my policies, and they had the policies; and Rosa said if I would not be of benefit to her I would not benefit anybody else. After I shot I left because I was afraid they would kill me. I went on to Charleston. I went on. I did not know I had killed anybody."

The motion for a new trial, originally based upon the general grounds, was amended by assigning as error: (1) That the court charged the jury that "in all cases of voluntary manslaughter there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing; and the serious personal injury, under our law, is the commission of a felony, and a felony is a crime punishable either by death or imprisonment in the penitentiary." The movant alleges that this law is applicable, not to voluntary manslaughter, but to self-defense; that the serious personal injury contemplated in the law of voluntary manslaughter "is a serious personal injury less than a felony;" and that this instruction took away from an otherwise correct statement of the law the idea of voluntary manslaughter altogether, deprived the defendant of a correct charge on that subject, placed upon him a greater burden than is required by law, and was incorrect, misleading, confusing, and deprived him of that defense. (2) That the court erred in charging, immediately following the charge just quoted, section 65 of the Penal Code, that provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from

the guilt and crime of murder, etc.; for the reason, that, the court having charged the law of voluntary manslaughter incorrectly as set out in the first special ground, confused the minds of the jury by giving in connection with that charge the instruction of which complaint is made in the second ground, thus mixing the law of voluntary manslaughter with the law of justifiable homicide. (3) That the court erred in failing to give in charge the law of self-defense and the doctrine of the fears of a reasonable man in connection therewith. "The defendant contends that this charge would have been applicable under the statement of the defendant, to wit, 'Rosa and Francis' daughter were coming out of the door and I was as close to them as to the back of the wall, and I said, "Is that you Rosa?" She screamed and dashed back into the house. I saw a man come out of the house, I saw him by the light coming from the room, and I shot.' The above-quoted excerpt from the statement of the defendant in connection with that portion of the defendant's statement given before, in which he said that there were threats to kill him, would authorize the inference that he shot at the man under the fear that he was coming out to assault him and take his life, and that if he labored under those circumstances, under the fears of a reasonable man, then he would have been justified in shooting at the man and when shooting at the man if the ball should hit his daughter he would equally be justified in killing her. The defendant contends that the failure to give in charge the doctrine of justifiable homicide and in connection with justifiable homicide the doctrine of the fears of a reasonable man was error prejudicial to the rights of the defendant." The court having referred to the contention of the defendant on the subject of self-defense in the following language, "The defendant contends, first, that he acted in self-defense in taking the life of Rosa. I charge you that if he acted in self-defense you should acquit him. The State's contention is that in taking the life of Rosa that he did not act in self-defense," the movant contends that in view of this reference to the defense of self-defense it was the duty of the court to charge sections 70 and 71 of the Penal Code, inasmuch as the court nowhere charged "the law applicable to self-defense or justifiable homicide or the doctrine of acting under the fears of a reasonable man." (4) That the charge as a whole was erroneous, in that it was argumentative and stated too strongly and repeated

too frequently the contentions of the State, and tended to impress the minds of the jury more strongly with those contentions than with the contentions of the defendant. (5) That the court erred in imposing sentence upon the defendant when both of his counsel were absent from the court-room.

■ There is no merit in the general grounds of the motion. The facts as derived from all the witnesses, as well as from the statement of the defendant himself, show a deliberate killing without any sufficient provocation to authorize even a mitigation of the penalty imposed by law for murder. It is true that in his statement the defendant told the jury that he did not come to the house where his wife and daughter were staying with an intention to shoot any one. He carried his pistol merely because he was in fear of danger from threats made against his life by his wife and one Reuben Hall. He stated that he did not shoot when he accosted his daughter with the inquiry, "Is that you, Rosa?" except for the fact that he saw by the light in the window a man approaching, when he shot three times. He does not state that he regretted that his daughter was shot at the time or at the time of the trial. He only suggests the inference that he was shooting at the man and not at his daughter. He does not state as a fact that such was the case. It does not appear from his statement that the man was armed with any weapon or was attempting to procure a weapon of any kind.

■ As must be conceded, and as is conceded in the clear and concise opinion of the learned trial judge in rendering judgment overruling the motion for a new trial, the assignment of error in the first special ground of the motion is well taken. The trial court's judgment referred to correctly ruled that the instruction as given was error. It is useless to quote from authorities; but in *Buchanan* v. *State*, 24 *Ga.* 282, *Smarrs* v. *State*, 131 *Ga.* 21 (61 S. E. 914), and other cases it has been settled by this court that a killing in resistance to or prevention of a felony is justifiable, but that no greater punishment than that provided for voluntary manslaughter can be inflicted if one without malice kills another in preventing an assault or injury which is a mere misdemeanor. However, after a very careful review of the record in this case, we concur in the view of the trial judge that this error in the charge will not require the grant of a new trial in this case, inasmuch as the defendant

was not entitled to an instruction of any kind upon the subject of voluntary manslaughter. The girl who was slain was his own daughter. She was unarmed. Instead of moving towards him when she was hailed by him, she immediately turned and fled. She had not uttered a word of a provocative nature or a single threat to arouse his passions. It could not be, even under his own statement, a killing due to the sudden and overpowering heat of passion supposed to be irresistible. His defense, if the movant had any, rests upon the doctrine of self-defense, fear of the man the defendant says he saw approaching him at the time he shot; and, as we have already pointed out, there is nothing in the statement that should have led the accused to believe that this man was intending to inflict an injury less than a felony upon him, when the previous threats stated by the accused are taken into consideration. The defendant was not injured by the error of the charge, and error must concur with injury before a court of review is authorized or required to reverse the judgment of the trial court in refusing a new trial. For the same reason, to wit, that the evidence did not authorize any instruction upon the subject of voluntary manslaughter, the second special ground of the motion for a new trial is without merit; and furthermore, the trial judge is not required, in the absence of a written request, to charge the theory of voluntary manslaughter if it has been suggested only by the statement of the defendant.

The third special ground is without merit. It is contended that the charge would have been applicable under the statement of the defendant, to wit, "Rosa and Francis' daughter were coming out of the door, and I was as close to them as to the back of the wall, and I said, 'Is that you, Rosa?' She screamed and dashed back into the house. I saw a man come out of the house. I saw him by the light coming from the room, and I shot." Of what was the defendant as a man reasonably cool and courageous afraid? Was he in fear that his life would be taken because he saw an unidentified man by the light coming from the room come out of the house? There is not even an inference from this that he was afraid of anything, much less that he feared his life was in danger or that a felony was about to be committed upon him. However, it is not necessary to elaborate the unreasonableness of the facts stated being sufficient reason to arouse the reasonable fears of

the law. It is enough to say that no request had been timely presented for appropriate instruction on this theory arising solely from this statement of the defendant. A reversal can not be predicated upon the failure of the judge to present to the jury the law of any phase or feature of the defense of one accused of crime, presented solely by the statement of the defendant, unless a timely and appropriate written request to that effect was preferred.

■ Upon a consideration of the entire charge we can not concur in the contention presented in the fourth ground of the motion. We are well aware that it has frequently been held in this State that stressing the contentions of one party at the expense of his adversary may amount to such an intimation of opinion, in violation of the section 4863 of the Code, as to demand the grant of a new trial; but it is clear that the charge did no more than state the contentions of each party as developed by the evidence and the defendant's statement, and dispassionately applied the law to each of these contentions. The charge as a whole was not subject to the criticism that the contentions of the State were so stressed as to disparage the contentions of the accused. Penal Code, § 1058.

■ Touching the fifth ground of the motion, it was stated in the order overruling the motion that on the day when the accused was convicted the judge stated in open court, in the presence of the prisoner and his counsel, that he would pronounce sentence the next morning. The next morning, after concluding, as was his custom, certain motions, and the prisoner being in court, the judge asked if he had anything to say why he should not be sentenced; and there being no reply, he pronounced sentence. The judge states that he did not observe whether counsel were present or absent. They had not been excused. We agree with the trial judge that it was the duty of the counsel to be present in court during the session of the court, and that it was solely their concern if they were absent either on account of pleasure or business. However, so far as the rights and interests of the accused in this case are concerned, these were not affected by the absence of counsel. Their presence to hear the sentence pronounced was unnecessary and could not and would not have availed anything.

*Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurs in the judgment.