Thompson, Associate Judge,
dissenting:
I am unable to join the majority opinion because my colleagues’ analysis dispenses with the requirement that, for a claim of self-defense to be valid, the defendant must have honestly and reasonably believed that her action (that would otherwise constitute an unlawful assault) was *856 necessary “to save hterjself.”[1] The trial court, by contrast, appears to have correctly understood that if the evidence disproved that appellant Parker acted to save or protect herself from (the threatened) attack, her self-defense claim must fail.
A.
I will not repeat the summary of evidence set out in the majority opinion, but do need to highlight relevant portions of appellant’s testimony and statements by the trial judge that reveal the court’s reasoning.
The trial court was very interested in why appellant spit on Powell, commenting that appellant’s “state of mind is what is important.” During appellant’s testimony, there was the following exchange:
THE COURT: I am going to ask this question during cross-examination so that it can be fully explored by both attorneys. Why is it that you spit in [Powell’s] face?
MS. PARKER: Because he came on my property and he came and spit on me first, ma’am, that’s why.
Later, during defense counsel’s re-direct examination of appellant, the court cautioned counsel against asking leading questions, explaining that:
THE COURT: [T]he answer is not going to be credible if the question is leading[,] and it is an important point in my fact finding responsibility whether she spit in his face out of a sense of anger and vindication and fairness and justice or whether she spit in his face as a form of self-defense. That is a critical question of fact for me ....
Defense counsel then asked appellant again why she took the actions she took. She answered:
MS. PARKER: It was just that he spit in my face and I felt scared with the way they approached me that day. They approached me in a very scary situation. I had a lot of people come approach me at one time and I really did not know what I did or what I did wrong for him to say he was going to smack me and walk on my property and then to spit in my face.
This echoed appellant’s earlier direct testimony that, “I just know that I didn’t do anything wrong.” The court thereafter denied defense counsel’s (renewed) motion for judgment of acquittal, stating that “a reasonable juror based on this record would be able to find that the defendant did what she did, performed the act of spitting not in self-defense but in anger and indignation” (emphasis added).
After closing arguments, the court found that appellant “reasonably believed that she was in imminent danger of bodily harm.” The court nevertheless ruled that the government had “carried its burden of proving beyond a reasonable doubt that with respect to the ... spitting, self-defense was not in play[.]” In explaining its ruling, the court said the following:
THE COURT: [I]n order for self-defense to apply[,] she has to use a reasonable amount of force in self-defense. Using a reasonable amount of force because she is angry or indignant or outraged or because of injustice, if somebody spits in your face which is what he did, that person deserves to be spit on and should expect to be spit on, that is not self-defense. That is spitting but not for purposes of self-defense and the government has proven on this record that *857 the spitting occurred not for reasons of self-defense but for those other reasons.
[[Image here]]
[E]very time [appellant] is asked, why did you spit on him, the immediate answer is, because he spit on me, and that was said directly on the scene to the police officer.[2] The answer to the same effect was indeed given to the prosecutor, I spit on him because he spit on me, and I directly asked, why did you spit on him. [Appellant’s answer was] I spit in his face because he came on my property and he spit on me first and there is street justice in that, (emphasis added).
Further explaining its finding, the court referred to “what could have been expected to happen next if that police officer had not been there” when appellant spit on Powell. Crediting appellant’s testimony to the effect that Powell was “backed up by his mother” and that “half a dozen members of his family were also approaching [appellant] and backing him up[,]” the court reasoned that:
THE COURT: Powell[,] backed up by his family and surrounding [appellant] the way he was and having just been spat on[,] would have made good on some of th[e] threats [he had made to appellant], not the shoot you threatf,] but the beat the S part of the threat. [Powell’s side] had the numbers and they had the anger and they had their expressed motivation.
The court found that appellant “did not spit on Mr. Powell as an act of self-defense[,]” i.e., that “the spitting occurred not for reasons of self-defense but for those other reasons.”
B.
The court’s statements quoted above reflect a recognition that what was missing each time from appellant’s explanation of why she spit on Powell was any statement to the effect that she spit on him in an effort to protect herself from harm.[3] Appellant had every opportunity to respond, “I spit on Powell to make him and his family go away” or “to make them stop bothering me,” or something to that effect,[4] but she gave no such response (and instead repeatedly mentioned not only Powell’s having spit at her when she had done nothing wrong, but also the affront of his coming onto her property). Nor did appellant describe her act of spitting on Powell as a merely reflexive action, as she had effectively done when explaining why she threw a can into the street (an action she took, according to the officer, before she spit on Powell):
MS PARKER: I threw [the can] in the middle of the street. I didn’t throw it at *858 him exactly. I just threw it, the can. I just threw the can. I don’t know, I was seared. I don’t know. I don’t know.
The court’s statements quoted above also appear to reflect an assessment by the court that, given the evidence that Powell was “backed up by [a half-dozen or more angry members of] his family,” no reasonable person could have believed that appellant’s spitting at Powell would protect appellant from harm.
Thus, the court’s key factual finding and reasoning were as follows: First, the court found that appellant’s motive in spitting on Powell was to effect “street justice” (i.e., retribution, revenge, or retaliation), and was not at all to defend herself.[5] See generally 2 Wayne R. LaFave, Substantive Criminal Law § 10.4 (c) (2d ed. 2003) (stating that a defendant acting in self-defense “does not lose the defense because [s]he acts with some less admirable motive in addition to that of defending [her]self (emphasis added)). My colleagues observe that appellant “never indicated that she had the ‘street justice’ motive that the court imputed to her,” ante, at 843 (majority opinion), but they stop short of concluding that the trial judge made a “factfinding error.” Ante, at 844 (majority opinion).
Second, the court reasoned that appellant could not have reasonably thought that her spitting at Powell would extricate her from danger, i.e., cause Powell and his family to leave her alone.[6] Yet, per this court’s case law discussed below, that is what a defendant must have believed to avail herself of the defense of self-defense.
C.
In numerous cases involving claims of self-defense, this court has said the following or its equivalent: “One who is defending against an assault charge, who is claiming self-defense, must have honestly and reasonably believed that he was in imminent peril of death or serious bodily harm, and that his response was necessary to save himself.” Travers, 124 A.3d at 639 (italics and underscoring added, internal quotation marks omitted; citing cases); see also, e,g., Higgenbottom v. United States, 923 A.2d 891, 900-01 (D.C. 2007) (approving an instruction that told the jury, inter alia, that “[a] person may use *859 an amount of force which, at the time of the incident, he reasonably believes is necessary to protect himself from imminent bodily harm” (italics and underscoring added)); Potter v. United States, 534 A.2d 943, 946 (D.C. 1987) (“[T]he jury could have found that appellant ... believefd], reasonably, that he had to throw a brick to fend off imminent bodily harm.” (italics and underscoring added)); McPhaul v. United States, 452 A.2d 371, 373 & 373 n.1 (D.C. 1982) (referring to “our standardized jury instructions” stating that “[a] person may use an amount of [nondeadly] force which, at the time of the incident, he reasonably believed was necessary to protect himself from imminent bodily harm”) (italics and underscoring added)); Criminal Jury Instructions for the District of Columbia, No. 9.501 (5th ed. 2016) (“A person may use an amount of [non-deadly] force which, at the time of the incident, s/he actually and reasonably believes is necessary to protect himselfiherself from imminent bodily harm.”).[7]
The foregoing citations demonstrate that what is firmly grounded in this court’s ease law (as well as in logic) is that a person acts in self-defense only when her action is an effort to save or protect herself or to fend off harm. While my colleagues make much of what they call our jurisdiction’s “two-part test” for self-defense,” ante, at 844 (majority opinion), they fail to give due attention to the lead-in clause that dictates when the “two-part test” is applicable: the statement that there is a right to use a “reasonable amount of force” (defined as applicable here by the non-deadly force paragraph of standardized jury instruction 9.501) “in self-defense.”[8] That is why — and it is no mere tautology to say it — a claim that the defendant acted in self-defense may be disproved by evidence establishing or supporting an inference that the defendant did not act in an effort to avert, *860 protect against, or save herself from danger. In other words, to prevail on a claim of self-defense, one must have acted “in self-defense,” i.e., acted in order to defend oneself; if the defendant acted purely for retribution, her action was not in self-defense.[9] For that reason, I cannot agree with my colleagues that the defendant’s “[m]otive is not separately and additionally considered as a basis for disproving a claim of self-defense.” Ante, at 839 (majority opinion).[10] Nor can I agree that the trial court “erred as a matter of law in conducting a separate inquiry” into why appellant spit on Powell.[11] Ante, at 838 (majority opinion). I do not mean to imply that such an inquiry will be necessary in every case. But, where (as here) the nature of the force the defendant used, or the defendant’s testimony, or other factors fairly raise the issue of whether the defendant undertook force in an actual effort to protect herself, the inquiry is appropriate and may be necessary. And while it may be difficult to prove that “there was another motive guiding the defendant’s action,” ante, at 844, if the credited evidence proves that such other motive(s) alone, and not defense of self, was the defendant’s reason for using force, the government will have met its burden to rebut the defendant’s claim of self-defense.
In this case — one in which the issue is whether the evidence permitted the court to find that appellant’s use of force was solely retaliatory and not defensive — we may not rest on the truncated discussions *861 of the law of self-defense found in some of our cases. See, e.g., Kittle v. United States, 65 A.3d 1144, 1158 (D.C. 2013) (“To invoke self-defense, there must be some evidence that: (1) appellant actually believed he was in imminent danger of bodily harm, and (2) he had reasonable grounds for that belief.” (internal quotation marks and brackets omitted) (quoting Guillard v. United States, 596 A.2d 60, 63 (D.C. 1991))). The abbreviated articulation of the law of self-defense in Kittle and similar cases sufficed in those cases because the issue was simply whether the defendant believed he was in danger of imminent harm; the issue was not the motive for the use of force or even the proportionality of the force the defendant used. See Kittle, 65 A.3d at 1160 (“[TJhere was no evidence, ‘however weak,’ to establish that appellant acted out of a fear of imminent harm.”); Snell, 754 A.2d at 291 (“[TJhere was evidence upon which a reasonable mind could find beyond a reasonable doubt that appellant did not reasonably believe he was in imminent danger of bodily harm[.J”).
Discussions of the self-defense standard in other cases add to the required inquiry whether, objectively, the force used by the defendant was reasonable or necessary. See, e.g., Higgenbottom, 923 A.2d at 900 (“[TJhe central questions for the jury were (1) whether appellant [who was charged with striking his assailant with a pipe] actually and reasonably believed that he was in imminent danger of bodily harm, and (2) whether he used only reasonable force to repel the perceived attack.” (italics added)). Formulations like this have been used when the focus of analysis was on whether the force the defendant used was excessive, not on whether the defendant used force that was so predictably ineffectual as not to qualify as force the defendant believed was necessary to protect herself. It appears that, until now, the latter issue simply has not arisen.
This court’s articulations of the self-defense standard that are on point here establish that an act is not taken in self-defense unless it is intended to be (and could reasonably be thought to be) defensive.[12] Our most pertinent explications of the standard dictate that, at least in some cases (and this is such a one), the necessary state-of-mind inquiry is not fully satisfied upon a conclusion that the defendant actually and reasonably believed she was in imminent danger of bodily harm, and that the self-defense analysis also is not complete upon a further conclusion that the amount of force used was not excessive. We must ask in addition (as the trial court in this case did) whether the appellant acted to protect herself (or whether, instead, she acted merely in retaliation, or only so as to “give as good as she got,” ante at 843 (majority opinion), or solely to vindicate her sense that there was nothing she “did wrong” to precipitate her assailant’s attack).
D.
All the foregoing said, I am not prepared simply to affirm appellant’s conviction, because it appears that the trial court, in reasoning that appellant could not have reasonably believed that spitting on Powell might extricate her from danger, failed to take into account some of the rebuttal testimony by Officer Bradley. Officer Bradley testified on rebuttal that when he came upon the scene, he observed “two families or two groups of family and friends yelling at each other on behalf of who[m]ever they were with.” On appel *862 lant’s side, there was “the actual driver of the vehicle that was out there[,]” who “was kind of the calming person trying to calm everybody down.” There were also “a few other people” “standing in the general area,” who “looked like they were on the defendant’s side. It “seemed like” these people on appellant’s side were yelling in Powell’s direction and that they “weren’t happy with” Powell.
In explaining its verdict and the rejection of appellant’s self-defense claim, the trial court did not mention Officer Bradley’s testimony about the “other people” on appellant’s side and thus did not explicitly credit or discredit the officer’s testimony in this regard. As described above, the court emphasized that Powell’s side “had the numbers and they had the anger” and reasoned that if Officer Bradley had not arrived just before appellant spit on Powell, Powell and the group of people on his side “would have made good on some of th[e] threats” he had made to appellant and predictably would have “beat the S” out of appellant (a forecast of violence that was not entirely speculative given appellant’s testimony that sometime prior to this incident, Powell had “jumped [appellant’s] daughter”). The court did not consider, however, whether, in a context where appellant had a “few other people” on her side who were showing anger toward Powell, appellant could honestly and reasonably have believed that her act of spitting on Powell could serve as a deterrent to further violence by Powell or the people who were on his side.
To put it differently, even if appellant could not reasonably have thought that spitting would protect her in a situation where she was alone against Powell and his several family members, it is less dear that she could not reasonably have thought that spitting would protect her in the situation Officer Bradley described. And because all the evidence, and not just the defendant’s testimony, is relevant to a finding about what the defendant who asserts a claim of self-defense could reasonably have believed (and to an inference about what she actually did believe),[13] I believe the trial court’s sole focus on appellant’s testimony was insufficient.[14] If credited, Officer Bradley’s testimony about there being a “few other people” on appellant’s side could permit the inference that appellant acted in self-defense and would possibly change the court’s calculus and impact its finding about whether the government met its burden of proving beyond a reasonable doubt that appellant did not act in self-defense.[15] I would vacate the *863 conviction and remand the case for the trial court to reconsider its ruling after considering Officer Bradley’s testimony in its entirety.[16]
E.
The final observations I will make about the majority opinion are these: First, in focusing only on whether the defendant feared imminent bodily harm and whether she used excessive force, the majority opinion gives short shrift to the rule that, even as to non-deadly force, “[t]he right of self-defense is a law of necessity, arising only when the necessity begins, and equally ends with the necessity.”[17] Second, the opinion does damage to the principle that none of us is entitled to “take redress into [jour own hands.”[18] Third, the majority’s holding — that when self-defense is raised, the only proper inquiry with respect to a defendant’s mental state is whether she subjectively and reasonably believed she was in imminent danger of bodily harm — is not a “reaffirm[ationj,” as my colleagues assert, ante, at 849 (majority opinion), but a new pronouncement that takes advantage of the unusual facts of this case to abandon the principle that a valid claim of self-defense also requires a belief by the defendant that the force she used toas necessary to protect herself from imminent danger. I do not understand on what authority my colleagues believe they are free to renounce that principle. See M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971) (“[W]e have adopted the rule that no division of this court will overrule a prior decision of this court ... and that such result can only be accomplished by this court en banc.” (footnote omitted)).

. Travers v. United States, 124 A.3d 634, 639 (D.C. 2015) (quoting Edwards v. United States, 721 A.2d 938, 941 (D.C. 1998)).

. The police officer who responded to the scene testified that appellant “explained to me clearly that she wouldn’t just spit on him for no reason, that he spit on her first

. I do not mean to imply that appellant bore the burden to prove that she acted in self-defense. I agree with my colleagues that it was “the government’s burden to prove that she did not.” Ante, at 843 n.13 (majority opinion). However, in determining whether that burden was met, the trial court was entitled to consider all the evidence, including appellant's own testimony — -and glaring omissions in that testimony — about why she spit on Powell.

.Cf. Ewell v. Untied States, 72 A.3d 127, 128, 132 (D.C. 2013) (internal quotation marks omitted) (describing the defendant's testimony that he struck the complainant in the face because, after throwing a cup of vodka at him and hitting him in the mouth, she “ 'was still coming’ at him” and he feared she had a knife and might pull it out and stab him; remanding the case to the trial court for reconsideration of defendant’s self-defense claim, because the court had failed to account for the testimony "tending to show that appellant acted to protect himself”).

. The court's focus was not on (as the concurrence puts it) "how many elements of retributive anger” it takes to defeat a claim of self-defense. Ante, at 853 (concurring opinion). The issue the court resolved was whether appellant’s spitting on Powell was at all an effort to repel the attack that was threatened by Powell and the half-dozen members of his family who had approached appellant and were backing Powell up, or instead was merely appellant’s effort to satisfy her (admittedly understandable) desire for retribution.

. I suspect the trial judge would have had no trouble concluding that appellant had acted in self-defense if she had, for example, grabbed a stick and brandished it at Powell and his family members, or if she had pulled out a can of pepper spray and let them have it. Both of those actions are, at least arguably, more aggressive actions than spitting, and our public policy surely is not to encourage an escalation of aggressive conduct. But, as a policy matter reflected in the common law, we tolerate a victim’s violent actions designed to stop a first aggressor’s assaultive action, and do not tolerate a victim’s violent actions that amount to nothing more than tit-for-tat acts of retaliation (and that risk elevating the first aggressor’s threatening conduct). None of this is to say, of course, that spitting could never be a defensive act against a violent aggressor. As one court has explained, "[i]t is not difficult to imagine a scenario in which spitting could conceivably constitute a use of force in self-defense — for example, where a person who has been placed in a chokehold spits at the aggressor to get him to loosen his grip,” State v. Markou, No. 104,931, 255 P.3d 51, 2011 WL 2802408, *3, 2011 Kan. App. Unpub. LEXIS 505, at *6 (Kan, Ct. App. July 5, 2011).

. Like Travers, many of our cases articulate essentially the same state-of-mind standard in the context of a defendant’s use of deadly or potentially deadly force. See, e.g., Bassil v. United States, 147 A.3d 303, 306-07 (D.C. 2016) (explaining that the use of deadly force in self-defense is justified if the defendant “honestly believed she was in imminent danger of serious bodily harm or death, and that she needed to use deadly force to save herself from that danger" and if "both those beliefs were objectively reasonable under the circumstances” (italics and underscoring added)); Edwards v. United States, 721 A.2d 938, 941 (D.C. 1998) (“The defender must have believed that he was in imminent peril of death or serious bodily harm, and that his response was necessary to save himself therefrom. These beliefs must not only have been honestly entertained, but also objectively reasonable in light of the surrounding circumstances. It is clear that no less than a concurrence of these elements will suffice.” (quoting United States v. Peterson, 483 F.2d 1222, 1229 (D.C. Cir), cert. denied, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973) (footnote signals omitted, italics and underscoring added)); Harper v. United States, 608 A.2d 152, 155 (D.C. 1992) ("The defender must have believed that he [or she] was in imminent peril of death or serious bodily harm, and that his [or her] response was necessary to save himself [or herself] therefrom.” (italics and underscoring added) (quoting Peterson); see also Freeman v. United States, 912 A.2d 1213, 1220 (D.C. 2006) ("In order to raise a claim of self-defense, a defendant must show ... that his response was necessary to save himself from the danger.” (italics added) (citing Brown v. United States, 619 A.2d 1180, 1182 (D.C. 1992) (citing cases))).

. See Criminal Jury Instructions for the District of Columbia, No. 9.500 (5th ed. rev. 2016) (“Self Defense — General Considerations”), providing in pertinent part that ”[e]very person has the right to use a reasonably amount of force in self-defense if (1) s/he actually believes s/he is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief.”) (emphasis added); see also, e.g., Snell v. United States, 754 A.2d 289, 290 (D.C. 2000) ("Reasonable force may be used in self-defense if the actor reasonably believes that he or she is in imminent danger of bodily harm.” (emphasis added)).

. In my view, these are quite unremarkable propositions. My colleagues in the majority, too, recognize that what is "entirely congruent with [a] claim of self-defense” is action "to repel the reasonably perceived danger[.]” Ante, at 843 (majority opinion).
To be clear, I do not suggest that a person who uses force after being assaulted by an aggressor may not have a mixture of emotions, including emotions such as anger, hate, or indignation. Indeed, I expect that any person in that situation would be quite likely to have a mix of emotions. But to be entitled to the defense of self-defense, the person must have used force not purely as an expression of those emotions, but in an effort to repel the imminent danger of bodily harm. A person may use "reasonable force to repel the perceived attack,” Higgenbottom, 923 A.2d at 900 (emphasis added).

. I agree with my colleagues that "[t]he essence of the self-defense situation is a reasonable and bona fide belief of the imminence of ... bodily harm (emphasis added)," Kinard v. United States, 96 F.2d 522, 526 (D.C. Cir. 1938), but the fact that the situation was one that would have justified efforts at self-defense does not mean that the defendant actually acted in self-defense. I agree that "the threshold question for the fact finder is whether the government has disproved that the ‘appellant actually and reasonably believed that [s]he was in imminent danger of bodily harm[,]’ ” Higgenbottom, 923 A.2d at 900, but that threshold question is not the only relevant question.

.The court’s inquiry was consistent not only with our case law discussed supra, but also with a common-law principle that is over a century old. See, e.g., Lyons v. People, 137 Ill. 602, 27 N.E. 677, 682 (1891) (approving a self-defense instruction that told the jury, “It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears and not in a spirit of revenge”) (second set of italics added); Wortham v. State, 70 Ga. 336, 339 (1883) (explaining that for a homicide to be justifiable, “[i]t must appear that the circumstances were such as to excite the fears of a reasonable man; and it must also further appear that he acted under those fears, and not in a spirit of revenge”) (italics added). I also note that issues such as those we have had to consider in this case continue to be discussed in the academic literature. See, e.g., Stephanie Spies, Malice Aforethought and Self-Defense: Mutually Exclusive Mental States?, 91 N.Y.U. L. REV. 1027, 1046 (Oct. 2016) (discussing a category of cases finding retaliation/revenge and self-defense incompatible); see also Martin R. Gardner, The Mens Rea Enigma: Observations on the Role of Motive in the Criminal Law Past and Present, 1993 Utah L. Rev. 635 (1993).

. I note tangentially that I take no issue with the statement that “[i]n the heat of passion, a person may actually and reasonably believe something that seems unreasonable to a calm mind,” Criminal Jury Instructions for the District of Columbia, No. 9.501.C.

. Cf. Guillard, 596 A.2d at 63 (concluding that defendant was entitled to an instruction on self-defense, even though defendant himself denied ever striking the complaining witness, because other evidence, including testimony that the complainant was violent and aggressive and had thrown items at the defendant, "fairly raised the issue of self-defense”); Gray v. United States, 549 A.2d 347, 349 n.2 (D.C. 1988) ("[A] defendant is entitled upon request to an instruction on any issue fairly raised by the evidence, regardless of whether it is consistent with the defense theory of the case or the defendant’s testimony.”).

. This is not to agree with my colleagues’ assertion that "it is difficult if not impossible to accept that [appellant’s] he-spit-on-me-first statement alone establishes, beyond a reasonable doubt, that [appellant was motivated solely by a desire to impose 'street justice,’ ” Ante, at 843 (majority opinion). Rather, it is to acknowledge that sometimes a defendant may be less than fully articulate or less than candid about her reason for acting, and that the court must consider all the evidence, not just the defendant’s testimony, before drawing an inference about why she acted as she did.

.Contrary to the suggestion in the concurrence, I do not suggest that appellant’s weak response signaled that the she did not actually and reasonably believe that she was in imminent danger of bodily harm (and the trial court, which expressly found that appellant believed that she was in imminent danger of *863 bodily harm[,]”) certainly did not suggest or infer that). To repeat, the point I make (and the point I believe the trial court recognized) is that the weakness of appellant’s spitting response raises an issue of whether she actually and reasonably believed that spitting on Powell could help repel the danger in which she found herself, danger posed not only by Powell but also by the half-dozen or so members of his family were also approaching appellant and "backing him up[.]” Appellant testified that she "didn't know what they"— people "known in the neighborhood to cause trouble”- — w[ere] going to do” (emphasis added).

.The court’s task on remand would include determining, in light of the officer's testimony about the presence of some of appellant’s family members on the scene, whether appellant's spitting on Powell "was too lame to evidence ... an attempt at self-protection,” ante, at 850 (concurring opinion), because it was not a proportionate reaction to the "very scary situation” she perceived from the "like eight people [on Powell’s side]” who "ap-proacbfed] [her] at one time.”

. Harper, 608 A.2d at 154 (D.C. 1992) (quoting United States v. Peterson, 483 F.2d 1222, 1229 (D.C. Cir.), cert. denied, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973)).

. State v. Ouellette, 37 A.3d 921, 926 n.2 (Me. 2012) ("Self-defense is defensive, not retaliatory: You may prevent an injury from being done by all proper means, but, when done, you cannot take redress into your own hands.” (internal quotation mark omitted)).